**FILED**

**JANUARY 31, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**08 C 702**

| | |
|---|---|
| BETHLEHEM ENTERPRISE INC., an Illinois corporation, and PARVATI CORP., an Illinois corporation, <br><br> Plaintiffs, <br><br> -vs- <br><br> CITY OF OAK FOREST, an Illinois municipal corporation; STEVE JONES, individually and in his official capacity as City Administrator of the City of Oak Forest; ADAM DOTSON, individually and in his official capacity as the Coordinator of the Community Development Department of the City of Oak Forest; and DAVID NEWQUIST, individually and in his official capacity as Assistant Coordinator of the Community Development Department of the City of Oak Forest; <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**JUDGE ST. EVE
MAGISTRATE JUDGE VALDEZ**

## COMPLAINT

NOW COME the Plaintiffs, BETHLEHEM ENTERPRISE INC., an Illinois

corporation ("BETHLEHEM"), and PARVATI CORP., an Illinois corporation

("PARVATI"), by and through their attorney, JOHN R. WIMMER, and

complaining of the Defendants, CITY OF OAK FOREST, an Illinois municipal

corporation; STEVE JONES, individually and in his official capacity as City

Administrator of the City of Oak Forest; ADAM DOTSON, individually and in

- 1 -

his official capacity as the Coordinator of the Community Development Department of the City of Oak Forest; and DAVID NEWQUIST, individually and in his official capacity as Assistant Coordinator of the Community Development Department of the City of Oak Forest, allege and state as follows:

### NATURE OF THE CASE

1.  Plaintiffs bring this action for damages and declaratory relief arising from the Defendants' discriminatory actions that blocked the sale of PARVATI's property to BETHLEHEM, a black organization from Harvey, Illinois, that sought to operate a senior living facility on the property.  Specifically, Plaintiffs seek legal relief pursuant to 42 U.S.C. §1981 for the Defendants' racially discriminatory violation of the Plaintiffs' right to make and enforce contracts (Count I); pursuant to 42 U.S.C. §1982 for the Defendants' racially discriminatory violation of the Plaintiffs' right to purchase, sell, hold, and convey real estate and personal property (Count II); pursuant to 42 U.S.C. §3604(a), §3604(c), and §3617 for the Defendants' violations of the federal Fair Housing Act (Counts III and IV); pursuant to 42 U.S.C. §1983 and the Fourteenth Amendment to the United States Constitution for the Defendants' denial of substantive due process to the Plaintiffs based on race or color (Count V); and pursuant to 42 U.S.C. §1983 and the Fourteenth Amendment to the United States Constitution for the Defendants' denial of the Plaintiffs' rights to equal protection of the laws (Counts VI, VII, VIII, and IX); Plaintiff PARVATI seeks legal relief pursuant to 42 U.S.C. §1983 and the First Amendment to the United States Constitution for the Defendants' retaliation against PARVATI

(Count X); and Plaintiff PARVATI seeks declaratory relief under Illinois law with respect to the validity of a certain zoning ordinance purportedly enacted by Defendant CITY OF OAK FOREST (Count XI).

## PARTIES

2.  Plaintiff BETHLEHEM is an Illinois corporation with its principal place of business in Harvey, Illinois.  The shareholders of BETHLEHEM are the Bethlehem Temple Missionary Baptist Church ("Bethlehem Church"), Pastor J.C. Smith ("Pastor Smith"), and his son, Jeffrey Smith ("Mr. Smith").  All members of the Bethlehem Church, including Pastor Smith and Mr. Smith, are black.

3.  Bethlehem Church first opened in 1969 and since then its membership has grown to in excess of 1,000 members.  Bethlehem Church is located in Harvey, Illinois, approximately 5.4 miles east of the property that is the subject of this lawsuit.  According to 2000 U.S. Census data, the population of Harvey is approximately 80 percent black.

4.  PARVATI is an Illinois corporation with its principal place of business in Oak Forest, Illinois.  The shareholders and officers of PARVATI are Balkrishna Ambalal Patel ("Mr. Patel") and Nirmala Balkrishna Patel, husband and wife (the "PATELS").  The PATELS are U.S. citizens who are Asian/Pacific Islanders from India.

5.  Amit Patel is the son of the PATELS.  At all relevant times, Amit Patel served as manager for PARVATI.  Amit Patel is a U.S. citizen who is an Asian/Pacific Islander from India.

6. Defendant CITY OF OAK FOREST ("CITY") is an Illinois home rule municipal corporation, organized and existing under the laws of the State of Illinois, with its principal place of business in Oak Forest, Illinois. According to 2000 U.S. Census data, the population of Oak Forest is 3.6 percent black and 90.4 percent white.

7. The City of Oak Forest Planning and Zoning Commission (the "ZONING COMMISSION") is a duly constituted commission established by the Oak Forest City Council.

8. All members of the ZONING COMMISSION are appointed by the Mayor of the City with the approval of the City Council.

9. Defendant STEVE JONES is an individual who has been the City Administrator of the CITY at all relevant times.

10. Defendant ADAM DOTSON is an individual who is the Coordinator of the CITY's Community Development Department, and who succeeded Robert McNeill in that position on or after November 22, 2005.

11. Defendant DAVID NEWQUIST is an individual who has been the Assistant Coordinator of the CITY's Community Development Department at all relevant times.

## **JURISDICTION**

12. The federal claims made in this action arise under and are based on the United States Constitution, 42 U.S.C. §1983 and other federal laws. Subject matter jurisdiction of the federal claims is based on 28 U.S.C. §1331 and §1343, and 42 U.S.C. §3613(a)(1)(A). This Court has supplemental

jurisdiction over the claim for declaratory relief under Illinois law pursuant to 28 U.S.C. §1367.

## VENUE

13.   Venue is proper in this Court pursuant to 28 U.S.C. §1391(b).

## FACTUAL ALLEGATIONS

14.   On or about October 1999, PARVATI purchased 3.76 acres of vacant land (the "Subject Property") within the corporate limits of the CITY.  At the time PARVATI acquired the Subject Property, it was located in the CITY's "M District" (Limited Manufacturing District) pursuant to the Oak Forest Zoning Ordinance of 1999 (the "1999 Zoning Ordinance").

15.   Pursuant to Section 17.36.020 of the 1999 Zoning Ordinance, "[h]ighway oriented commercial/retail uses, as determined by the planning and zoning commission" were deemed permitted uses in the M District, subject to approval of a site plan.

16.   On or about February 29, 2000, at a special meeting of the City Council, the City Council of the CITY unanimously approved a final site plan for PARVATI to construct a 60-room hotel on a portion of the Subject Property.

17.   In early May 2000, PARVATI commenced construction of the hotel on the Subject Property.  At the time, PARVATI estimated that construction would be completed in October 2001.

### Parvati Objects to the City's Illegal Landscape Waste Burning Activities

18.   In late July 2000, shortly after PARVATI began construction on the Subject Property, one or more persons driving trucks from the CITY's Public

Works Department had begun to burn landscaping waste on a Vacant Lot immediately adjacent to the Subject Property (the "Vacant Lot"). PARVATI did not own the Vacant Lot. Several construction workers complained to PARVATI that the black smoke from the burning activities caused working conditions on the Subject Property to become intolerable. Due to the noxious, black smoke, construction of the hotel came to a halt for several days.

19. Upon further investigation, Mr. Patel and Amit Patel learned that employees from the CITY's Public Works Department were storing and burning landscaping waste on the Vacant Lot pursuant to an agreement with the landowner of the Vacant Lot.

20. In early August 2000, Amit Patel placed a telephone call to Luke Kent, the CITY's Building Commissioner, and requested that the CITY cease and desist from storing and burning the landscaping waste on the Vacant Lot. Without committing to stop the burning activities, Mr. Kent agreed to visit the site.

21. Within a few days, Mr. Kent met with Mr. Patel and Amit Patel at the Vacant Lot. During the meeting, Mr. Kent said that the CITY would not stop burning landscaping waste on the Vacant Lot. Mr. Kent told Mr. Patel and Amit Patel that the CITY had a permit from the Illinois Environmental Protection Agency ("IEPA") to burn landscaping waste on the vacant lot. On information and belief, the CITY did not have a permit from the IEPA to burn landscaping waste on the Vacant Lot, and was not otherwise authorized to do so.

22.   During the same meeting, Mr. Patel and Amit Patel told Mr. Kent that PARVATI intended to purchase the Vacant Lot in order to stop the burning activities.  In response, Mr. Kent threatened PARVATI and said that Mayor Patrick Gordon would invoke the CITY's eminent domain powers and condemn the Vacant Lot if PARVATI bought it.

23.   In September 2000, Mr. Patel entered into a contract with the adjacent landowner to acquire the Vacant Lot.  Soon thereafter, the Seller of the Vacant Lot demanded that the CITY discontinue its landscape waste burning activities and to vacate the Vacant Lot.  Immediately thereafter, Mr. Kent called Amit Patel and requested a meeting at City Hall with PARVATI.

24.   Amit Patel and Mr. Patel agreed to meet with the CITY a few days thereafter.  In attendance at the second meeting for the CITY were Mr. Kent, Mayor Patrick Gordon, and Superintendent of Public Works, Michael Feeley. Mr. Feeley pled guilty on November 10, 2004, to federal charges of racketeering and filing false U.S. tax returns relating to the use of his position as Superintendent of Public Works for the CITY to solicit and accept bribes and kickbacks from various CITY contractors from 1997 through at least January of 2002.  Mr. Feeley received a prison sentence of nine (9) years imposed by the U.S. District Court for the Northern District of Illinois.

25.   During the meeting, Mayor Gordon asked PARVATI if the CITY could continue burning the landscaping waste until April 2001, the month in which elections were to be held in Oak Forest for mayoral and aldermanic positions. Mayor Gordon was up for re-election in April 2001.  Because construction of

the hotel was ongoing and the hotel was expected to open in January 2001, PARVATI refused the Mayor's request to allow the landscape waste burning to continue.

26.  On November 29, 2000, Mr. Patel closed on the purchase of the Vacant Lot.

27.  On information and belief, the CITY thereafter continued its illegal landscape waste burning activities in nearby Markham, Illinois.

28.  On information and belief, the CITY's landscape waste burning activities in nearby Markham led to charges being filed against the CITY by the Cook County State's Attorney's Office and the IEPA, resulting in a fine of approximately $35,000 being imposed on the CITY.

### Parvati Completes Construction of the Ramada

29.  In January 2001, PARVATI completed construction of the hotel and the CITY issued PARVATI a business license.  At all relevant times since completing construction, PARVATI has operated a hotel on a portion of the Subject Property.

### The City Embarks on a Campaign of Harassment Against Parvati

30.  Almost immediately after PARVATI opened the Ramada, the CITY embarked on a campaign of harassment against PARVATI.

### Unwarranted City Fire Inspections

31.  From approximately February 2001 through no earlier than March 2002, Captain Jim Berger, the former CITY Fire Inspector, conducted approximately fifty (50) unannounced "inspections" of the Ramada.  None of

these inspections identified any critical issues, and only one required an

appearance in the CITY housing court.

### Staged Call to Convert the Ramada to a "Detention Facility"

32.  In the summer of 2003, PARVATI received an unsolicited telephone

call from a contract intermediary of the United States Department of Homeland

Security ("DHS").  The representative stated that Robert McNeill, the former

Coordinator of the City's Community Development Department "(CDD"),

contacted him and stated that PARVATI was interested in leasing the Ramada

as a "detention facility" to the DHS.  In fact, PARVATI had never expressed any

such interest to anyone, including Mr. McNeill.

33.  Shortly after receiving the telephone call from the DHS

representative, a newspaper article appeared in the Star newspaper in which

Mr. McNeill stated that PARVATI would probably reject the DHS offer.

PARVATI was never contacted for the article.  The owners of PARVATI were

deeply offended by the newspaper article.


### Parvati Assists Lockridge Outdoor
### Advertising in the Exercise of its
### First Amendment Right to Freedom of Speech

34.  In June of 2003, PARVATI entered into a contract with Jon W.

Lockridge, d/b/a Lockridge Outdoor Advertising Agency ("Lockridge"), whereby

PARVATI granted Lockridge an easement on a portion of the Subject Property

for the purpose of erecting, using, operating, maintaining and replacing

outdoor advertising structures (an advertising billboard) for the purpose of

engaging in commercial speech.

35.   Under said contract, the easement granted was contingent on Lockridge obtaining all necessary permits and governmental approvals for his billboard.

36.   The contract required PARVATI to assist Lockridge and to take such reasonable steps as Lockridge should request in order that Lockridge might be able to erect the billboard and engage in commercial speech, including, but not limited to, supporting any request by Lockridge for permits or other approvals relating to the billboard.

37.   That thereafter PARVATI assisted Lockridge in connection with its application to the CITY to post its signs by providing Lockridge with a survey of the Subject Property, a list of all adjoining property owners, a copy of the current zoning ordinances, and by accompanying Lockridge to the City Hall when he filed his applications.

38.   On September 17, 2003, the CITY denied Lockridge's applications to post his signs.

39.   Said denial by the CITY of Lockridge's applications to post its signs was in violation of the First Amendment, and an abridgment of Lockridge's right to freedom of speech.

40.   On November 20, 2003, Lockridge filed in the United States District Court for the Northern District of Illinois, Eastern Division, a complaint against the CITY, alleging that the denial of its applications constituted an abridgment of his right to freedom of speech under the First Amendment to the United

States Constitution, and seeking damages, injunctive relief, and attorneys' fees. Said complaint was docketed as Case No. 03 CV 8325.

41.  Lockridge's lawsuit against the CITY was pending until September 29, 2004, the case ending when the CITY agreed to allow Lockridge to post his signs.

### Parvati's Proposed Use of the Property as a Senior Living Facility

42.  On or about October 21, 2003, Mr. Patel and Amit Patel met with Mr. McNeill to discuss their proposal to convert the Ramada to an assisted living facility due to, *inter alia*, the negative economic impact on hotels in the area from the arrival of new hotels in the vicinity of Oak Forest after February 2001.

43.  On November 21, 2003, the CDD rejected PARVATI's proposal ostensibly because, *inter alia*, the CITY did not feel PARVATI had the expertise to convert the hotel to an ALF.

44.  On or about November 20, 2003, PARVATI entered into an agreement with Inland Real Estate ("Inland") to list the Subject Property for sale for $4,800,000.  Inland believed that the highest and best use for the Subject Property was as a senior independent living facility, and marketed the Subject Property accordingly.

45.  The Inland listing agents, Joe Esselman and Kevin List, arranged a meeting which took place shortly before November 20, 2003, at the CITY's main hall with Mayor Gordon, Mr. McNeill and Defendant DAVID NEWQUIST to discuss the listing of the Subject Property for sale as senior independent living

and to determine whether the CITY would support such a use at the Subject Property.  Mr. List was a member of the CITY's Economic Development Committee at the time of the meeting.  During this meeting, the CITY stated that it would support senior independent living at the Subject Property if an experienced operator was presented.

46.  In connection with its desire to convert the hotel to an assisted living facility, PARVATI requested a meeting with the CDD, which was held in mid-December of 2003 at City Hall.  Mr. Patel and Amit Patel attended the meeting on behalf of PARVATI.  To the surprise of PARVATI, Mr. McNeill had assembled Mayor Gordon, the City Police Chief, the City Fire Chief and Assistant Fire Chief, the City Administrator, the City Building Commissioner and Defendant DAVID NEWQUIST, the Assistant Community Development Director.

47.  During this meeting, and in reference to PARVATI's proposal, Mayor Gordon specifically asked PARVATI "why are you looking for help from us, when you never helped us in the past."  When PARVATI mentioned that Inland was marketing the Subject Property as a senior living possibility, Mr. McNeill threatened to contact Inland and have them delist the property.  Mr. McNeill also chastised PARVATI and stated that the CITY should never have let PARVATI construct the Ramada.  Defendant DAVID NEWQUIST also claimed that PARVATI had been the subject of over 300 complaints relating to code enforcement issues at the Ramada.  Defendant DAVID NEWQUIST, however, refused to turn over copies of the complaints to PARVATI, despite representing that he claimed to be carrying a folder with the complaints at the meeting.

PARVATI later issued a Freedom of Information Act request for the complaints, but none were turned over by the CITY.

### The City Interferes With Parvati's Listing

48.  Shortly after the CDD meeting, Mr. McNeill contacted Inland Real Estate and demanded that Inland remove the listing for the Subject Property. Inland, in fact, removed the listing and ceased all marketing efforts.  Inland did not seek PARVATI's prior agreement to remove the listing.

### The Original Contract Between Parvati and Bethlehem Community

49.  In March 2004, Pastor Smith entered into a contract with PARVATI on behalf of Bethlehem Community Development Corporation ("Bethlehem Community") to acquire the Subject Property contingent upon securing any zoning approval from the CITY.

50.  In May of 2004, Pastor Smith first informed the CITY of his plans to acquire the Subject Property for use as a senior living facility.

### The City Conditions Approval of the Proposed Use on Bethlehem's Agreement to Forego Property Tax Benefits

51.  In late June of 2004, Amit Patel and Pastor Smith met with Mr. McNeill and Defendant DAVID NEWQUIST, the Assistant Community Development Director, to review the proposal to acquire the Subject Property and operate a senior living facility.  John Morrow of Pacor Mortgage was also present.

52.  During the meeting, Mr. McNeill sought an agreement on behalf of the CITY that Pastor Smith would (a) accept an industrial classification for the Subject Property for real estate tax purposes rather than any lower

classification that would otherwise be assigned by the Cook County Assessor, (b) forego any right to appeal the tax classification or assessed value of the Subject Property, and (c) forego any property tax exemptions.  Mr. McNeill stated that the CITY would be inclined to support Pastor Smith's proposed use if he agreed to these conditions.  Pastor Smith rejected the CITY's request.  Mr. McNeill then told Pastor Smith "don't waste your time and effort to proceed with the project because the CITY would not support it."  Mr. McNeill raised the property tax issues with the members of the ZONING COMMISSION on at least two subsequent occasions on November 23, 2004, and April 6, 2005.

## The City Rezones the Subject Property

53.  On or about July 7, 2004, the CDD petitioned the ZONING COMMISSION to recommend the enactment of an amendment to the 1999 Zoning Ordinance relating to the manufacturing zoning district.  On July 21, 2004, the ZONING COMMISSION recommended to the City Council that it approve the amendment.

54.  On or about August 11, 2004, the CITY purported to enact Ordinance No. 2836, styled "An Ordinance Amending the Zoning Ordinance (2381) of the City of Oak Forest, Cook County, Illinois, to Provide for Multiple Zoning Classifications Regulating Manufacturing Uses, Activities and Processes" ("Ordinance 2836").  Ordinance 2836 purportedly made provision for both M1 and M2 districts in the existing M district, but no zoning map designating M1 and/or M2 districts was adopted by the CITY until March of 2006.

55.  In December of 2004, at a meeting of the ZONING COMMISSION, Mr. McNeill stated that the Subject Property was zoned M2 pursuant to Ordinance 2836.

### The City's Additional Threats of Condemnation

56.  On or about April 6, 2005—the same date that Bethlehem Community made a presentation to the ZONING COMMISSION regarding its proposed use—Lieutenant Shaunessby of the CITY's Police Department told Amit Patel that the CITY was considering condemning the Vacant Lot for use by its Police Department as a gun range, and that the CITY had already secured budget approval for the acquisition by eminent domain.

### The Contract Between Parvati and Bethlehem

57.  On or about July 1, 2005, PARVATI and BETHLEHEM entered into a contract whereby PARVATI would sell the hotel to BETHLEHEM for $4,500.000.  This contract superseded the prior agreement between PARVATI and Bethlehem Community, and specifically added all existing fixtures and furniture to the sale.  The contract was contingent upon BETHLEHEM securing approval from the CITY to operate a business.

58.  By mid-2005, BETHLEHEM had secured financing to acquire the hotel and was at all times ready and willing to close on the sale of the hotel.

### The Bogus Violation Notice Issued by the City to Parvati

59.  On or about August 31, 2005, an anonymous writer sent a letter to the Cook County Department of Public Health (incorrectly addressed to Oak Forest, Illinois, instead of its correct location in Oak Park, Illinois) regarding a

"Request Inspection of Ramada Oak Forest." The letter closed by stating "I felt a lot of tax evasion going on at this facility."

60.  On or about September 2, 2005, Defendant DAVID NEWQUIST of the CDD issued a written directive to a litany of individuals to "investigate" the anonymous complaint and to "take corrective action." The directive was sent to the CITY's Health Department, Ordinance Enforcement Officer, Police Department, Fire Department, and Building Department, with copies to the Mayor, Alderman Chinino and Defendant STEVE JONES, the City Administrator.

61.  On or about September 15, 2005, PARVATI received a "Notice of Violation" signed by James Bosvay, an Ordinance Enforcement Officer for the CITY. According to the notice, Officer Bosvay claimed to have conducted an inspection of the Ramada on September 2, 2005, at 9:00 a.m. The Notice stated that Officer Bosvay found the following violations: "5.38  Hotel Sanitation. Numerous Complaints. 9.08.080. Hotel guests creating disturbances. Numerous Police actions." Officer Bosvay ordered a representative of the Ramada to appear for a hearing on the alleged violations on September 22, 2005 at City Council Chambers.

62.  Amit Patel was present at the Ramada for the entire day on September 2, 2005. Officer James Bosvay was not present in the Ramada on that day.

63.  On September 16 and 19, 2005, Amit Patel sent separate FOIA requests to the CITY seeking information forming the basis for the purported

inspection and charges.

64.  On September 22, 2005, during the hearing on the Notice of

Violation, Officer Bosvay represented to the hearing officer that "his complaint

file against the Ramada is bigger than this room" and that, according to Mr.

McNeill, PARVATI had initiated litigation against the CITY, which was not true.

Due to the pending FOIA requests, the hearing was continued to October 17,

2005, and then again to November 17, 2005.

65.  Approximately one week before the scheduled November 17, 2005,

hearing, the CITY informed Amit Patel that it did not have any documents

relating to the purported housing code violations.  Mr. McNeill and Defendant

DAVID NEWQUIST were copied on the CITY's response to the FOIA request.

66.  On November 17, 2005, Officer Bosvay informed the hearing officer

that the CITY would be dismissing the charges against PARVATI.  Officer

Bosvay then admitted that he "just wanted the Patels to know that I was asked

to bring them here."

67.  On information and belief, Mr. McNeill resigned from the CDD five

days later on November 22, 2005.

### Bethlehem Application for a Business License

68.  On or about October 6, 2005, BETHLEHEM filed an application with

the CITY for a commercial business license to operate an extended stay hotel

on the Subject Property.

69.  On or about November 21, 2005, Defendant STEVE JONES, the City

Administrator, denied BETHLEHEM's license application, purporting to find

that the proposed use was equivalent to a "multi-family" or "apartment" use under the City's 1999 Zoning Ordinance, and that the proposed use would result in the replacement of one non-conforming use (the existing hotel) with another non-conforming use (an "apartment").

70.  On December 20, 2005, PARVATI and BETHLEHEM filed and served an appeal with the ZONING COMMISSION challenging the City Administrator's November 21, 2005, decision.

71.  After BETHLEHEM's application for a business license was denied, Amrish Mahajan, the President of Mutual Bank (PARVATI's lender), suggested to Mr. Patel and Amit Patel that they meet with Jerry Galloway and Dan Shoman who could offer assistance in appealing the CITY's denial of BETHLEHEM's license.  Mr. Galloway was a public relations/government affairs specialist, and Mr. Shoman had then recently finished serving as the director of Senator Barack Obama's successful 2004 campaign.  PARVATI agreed to a meeting.

72.  In early December 2005, Mr. Patel and Amit Patel met with Messrs. Mahajan, Galloway, and Shoman in the lobby of the Ramada.  Messrs. Galloway and Shoman recommended having a meeting with the CITY to discuss the proposed use of the facility by BETHLEHEM.  Mr. Patel and Amit Patel agreed to a meeting.  Mr. Shoman thereafter arranged a meeting with Defendant STEVE JONES, the City Administrator, to take place on January 25, 2006.

73.  Prior to the meeting scheduled for January 25, 2006, Mr. Shoman

informed Mr. Patel and Amit Patel that he had spoken with "high level" City staff members who comfirmed that "black ownership makes the proposal [of BETHLEHEM] worse" and that "City Hall did not want black ownership of the Ramada."

74.   Defendant STEVE JONES, the City Administrator, and Defendant ADAM DOTSON, the CDD Coordinator, were present at the meeting on January 25, 2006.  Mr. Patel, Amit Patel and Messrs. Galloway and Shoman were present on behalf of PARVATI, along with PARVATI's attorney.  During the meeting, Mr. Galloway informed Defendant STEVE JONES that the racial mix of the property would not change under BETHLEHMEM's proposed use, and that, in fact, approximately 90 percent of the Ramada's guests had been black. Defendant STEVE JONES interrupted and said "I thought this meeting had nothing to do with BETHLEHEM," and Defendant STEVE JONES asked Amit Patel "Do you have another buyer?"  Amit Patel answered "No, we do not have another buyer."  At the time of this meeting, PARVATI still had a contract to sell the Subject Property to BETHLEHEM.

75.   On February 1, 2006, the ZONING COMMISSION conducted a hearing on Plaintiffs' appeal.  At the conclusion of the hearing, the ZONING COMMISSION issued a final decision and denied the Plaintiffs' appeal.

76.   At all relevant times, the Defendants, and each of them, acted under color of state law.

77.   The ZONING COMMISSION is charged with the responsibility to interpret the City's 1999 Zoning Ordinance, including hearing any appeals

from an administrative order, requirement, decision, or determination made by any authorized official of the CITY having jurisdiction under the 1999 Zoning Ordinance.

78.  On February 1, 2006, the ZONING COMMISSION conducted a hearing on Plaintiffs' appeal.  On that same date, the ZONING COMMISSION unanimously denied the appeal of PARVATI and BETHLEHEM and entered its final decision on the matter.

79.  There would have been no impact on the public health, safety, or welfare, or on any of the surrounding properties from the proposed use of the Subject Property, except in a positive way.

### COUNT I

### Violation of 42 U.S.C. §1981

### (PARVATI and BETHLEHEM against<br>CITY, JONES, DOTSON and NEWQUIST)

80.  Plaintiffs adopt and incorporate by reference each of the prior allegations in this Complaint as though fully set forth in this Count I.

81.  The Defendants knew that the contract between PARVATI and BETHLEHEM was contingent upon BETHLEHEM obtaining a license from the CITY to operate a business on the Subject Property.

82.  The Defendants intentionally discriminated against the Plaintiffs in rejecting the proposed use of the Subject Property because BETHLEHEM was owned and operated entirely by blacks.  By rejecting the proposed use and denying BETHLEHEM a business license, the Defendants prevented a contingency from being fulfilled in the contract between PARVATI and

BETHLEHEM, rendering the contract unenforceable.

83.  By virtue of their actions, the Defendants deprived the Plaintiffs on account of race, of the same right to make and enforce contracts as is enjoyed by white citizens, in violation of 42 U.S.C. §1981.

84.  The Defendants' actions have caused the Plaintiffs to suffer significant harm and damages.

85.  The Plaintiffs seek the recovery of their reasonable attorneys' fees pursuant to 42 U.S.C. §1988.

WHEREFORE, PARVATI and BETHLEHEM respectfully pray that this Court (1) award the Plaintiffs, and each of them, compensatory damages in an amount to be determined by the jury, (2) award the Plaintiffs, and each of them, and assess against the Defendants, punitive damages in an amount to be determined by the jury, (3) award the Plaintiffs, and each of them, their reasonable attorneys' fees pursuant to 42 U.S.C. §1988, (4) award the Plantiffs, and each of them, their costs pursuant to Fed.R.Civ.P. 54, and (5) grant the Plaintiffs, and each of them, such other and further relief as is proper and just in the premises.

## COUNT II

### VIOLATION OF 42 U.S.C. §1982

### (Parvati and Bethlehem Against CITY, JONES, DOTSON and NEWQUIST)

86.  Plaintiffs adopt and incorporate by reference each of the prior allegations in this Complaint as though fully set forth in this Count II.

87.  The Defendants knew that the contract between PARVATI and

BETHLEHEM was contingent upon BETHLEHEM obtaining a license from the CITY to operate a business on the Subject Property.

88.  The Defendants intentionally discriminated against the Plaintiffs in rejecting the proposed use of the Subject Property because BETHLEHEM was owned and operated entirely by blacks.  By rejecting the proposed use and denying BETHLEHEM a business license, the Defendants prevented a contingency from being fulfilled in the contract between PARVATI and BETHLEHEM, rendering the contract unenforceable.

89.  By virtue of their actions, the Defendants deprived the Plaintiffs, on account of race, of the same right to purchase, sell, hold, and convey real estate and personal property as is enjoyed by white citizens, in violation of 42 U.S.C. §1982.

90.  The Defendants' actions and omissions have caused the Plaintiffs to suffer significant harm and damages.

91.  The Plaintiffs seek the recovery of their reasonable attorney's fees pursuant to 42 U.S.C. §1988.

WHEREFORE, PARVATI and BETHLEHEM respectfully pray that this Court (1) award the Plaintiffs, and each of them, compensatory damages in an amount to be determined by the jury, (2) award the Plaintiffs, and each of them, and assess against the Defendants, punitive damages in an amount to be determined by the jury, (3) award the Plaintiffs, and each of them, their reasonable attorneys' fees pursuant to 42 U.S.C. §1988, (4) award the Plantiffs, and each of them, their costs pursuant to Fed.R.Civ.P. 54, and (5) grant the

Plaintiffs, and each of them, such other and further relief as is proper and just in the premises.

### COUNT III

### VIOLATION OF THE FAIR HOUSING ACT
### 42 U.S.C. §3604(a) and §3604(c)

### (BETHLEHEM Against CITY, JONES, DOTSON and NEWQUIST)

92.  BETHLEHEM adopts and incorporates by reference each of the prior allegations in this Complaint as though fully set forth in this Count III.

93.  Several members of the Bethlehem Church intended to reside in the proposed facility for a minimum of six months and even up to one year or more.  The Defendants knew that all members of the Bethlehem Church were black.

94.  By virtue of their actions, the Defendants made unavailable or denied a dwelling to BETHLEHEM, and one or more members of the Bethlehem Church who intended to reside there, because of the race, color, or national origin of the owners of BETHLEHEM and the members of the Bethlehem Church in violation of 42 U.S.C. §3604(a).

95.  The Defendants made one or more statements with respect to the sale of a dwelling that indicated a preference, limitation or discrimination based on race, color, or national origin in violation of 42 U.S.C. §3604(c).

96.  The Defendants' actions have caused BETHLEHEM to suffer significant harm and damages.

97.  BETHLEHEM seeks the recovery of its reasonable attorneys' fees

pursuant to 42 U.S.C. §1988.

WHEREFORE, BETHLEHEM respectfully prays that this Court (1) award BETHLEHEM compensatory damages in an amount to be determined by the jury, (2) award BETHLEHEM, and assess against the Defendants, punitive damages in an amount to be determined by the jury, (3) award BETHLEHEM its reasonable attorneys' fees pursuant to 42 U.S.C. §1988, (4) award BETHLEHEM its costs pursuant to Fed.R.Civ.P. 54, and (5) grant BETHLEHEM such other and further relief as is proper and just in the premises.

## COUNT IV

## VIOLATION OF THE FAIR HOUSING ACT
## 42 U.S.C. §3617

## (PARVATI Against CITY, JONES, DOTSON and NEWQUIST)

98.  PARVATI adopts and incorporates by reference each of the prior allegations in this Complaint as though fully set forth in this Count IV.

99.  By virtue of their actions, the Defendants coerced, intimidated, threatened, or interfered with PARVATI in the exercise or enjoyment of, or on account of having exercised or enjoyed, its property rights under 42 U.S.C. §3604, in violation of 42 U.S.C. §3617.

100.  The Defendants' actions have caused PARVATI to suffer significant harm and damages.

101.  PARVATI seeks the recovery of its reasonable attorneys' fees pursuant to 42 U.S.C. §1988.

WHEREFORE, PARVATI respectfully prays that this Court (1) award PARVATI compensatory damages in an amount to be determined by the jury,

(2) award PARVATI and assess against the Defendants punitive damages in an amount to be determined by the jury, (3) award PARVATI its reasonable attorneys' fees pursuant to 42 U.S.C. §1988, (4) award PARVATI its costs pursuant to Fed.R.Civ.P. 54, and (5) grant PARVATI such other and further relief as is proper and just in the premises.

## COUNT V

### 42 U.S.C. §1983—SUBSTANTIVE DUE PROCESS

### (PARVATI and BETHLEHEM Against CITY, JONES, DOTSON and NEWQUIST)

102.   Plaintiffs adopt and incorporate by reference each of the prior allegations in this Complaint as though fully set forth in this Count V.

103.   The Defendants' rejection of BETHLEHEM's proposed use of the Subject Property and denial of a business license deprived Plaintiffs of state created property rights.  The Defendants' actions were arbitrary, capricious, unreasonable, invidious, and/or irrational, and thereby violated the Plaintiffs' rights to substantive due process under the Fourteenth Amendment of the United States Constitution.

104.   The Defendants' actions have caused the Plaintiffs to suffer significant harm and damages.

105.   Plaintiffs seek the recovery of their reasonable attorneys' fees pursuant to 42 U.S.C. §1988.

WHEREFORE, PARVATI and BETHLEHEM respectfully pray that this Court (1) award the Plaintiffs, and each of them, compensatory damages in an amount to be determined by the jury, (2) award the Plaintiffs, and each of

them, and assess against the Defendants, punitive damages in an amount to be determined by the jury, (3) award the Plaintiffs, and each of them, their reasonable attorneys' fees pursuant to 42 U.S.C. §1988, (4) award the Plaintiffs, and each of them, their costs pursuant to Fed.R.Civ.P. 54, and (5) grant the Plaintiffs, and each of them, such other and further relief as is proper and just in the premises.

## COUNT VI

## 42 U.S.C. §1983—EQUAL PROTECTION

## (PARVATI Against CITY, JONES, DOTSON and NEWQUIST)

106.  PARVATI adopts and incorporates by reference each of the prior allegations in this Complaint as though fully set forth in this Count VI.

107.  On information and belief, at some point in 2001, the ZONING COMMISSION, and, thereafter, the CITY, approved a proposal by Warrior Insurance Group, Inc. ("Warrior") to sell a parcel of vacant land to Alden Realty Service, Inc. ("Alden") for purposes of constructing a senior housing facility in a non-residential zoning district in Oak Forest.

108.  As a result of this favorable treatment, Alden or one of its affiliated companies, was allowed to construct the Horizon Senior Living Community, a five story, 85-unit senior independent living facility.

109.  PARVATI and Warrior were similarly situated persons entitled to equal protection under the law.

110.  The Defendants intentionally treated PARVATI differently from Warrior and the cause of the Defendants' differential treatment was the

Defendants' totally illegitimate animus toward PARVATI. In particular, the Defendants' irrational and wholly arbitrary action in denying the proposed use of the Subject Property and denying BETHLEHEM's application for a business license were motivated solely by vindictiveness against PARVATI (a) in retaliation for PARVATI's objections to, and ultimate refusal to allow, the CITY to continue its illegal landscape waste burning operations on the Vacant Lot, (b) in retaliation for PARVATI'S lawful issuance of several Freedom of Information Act requests to the CITY relating to the CITY's bogus housing code violation charges, (c) as punishment for challenging, and ultimately forcing the CITY to withdraw, its bogus housing code violation charges against PARVATI, (d) as punishment for contracting to sell the Subject Property to BETHLEHEM, a black owned and operated entity, and (e) to retaliate against PARVATI for assisting Lockridge in the exercise of his First Amendment rights relating to the posting of a billboard on the Subject Property.

111. The Defendants' actions have caused PARVATI to suffer significant harm and damages.

112. PARVATI seeks the recovery of its reasonable attorneys' fees pursuant to 42 U.S.C. §1988.

WHEREFORE, PARVATI respectfully prays that this Court (1) award PARVATI compensatory damages in an amount to be determined by the jury, (2) award PARVATI, and assess against the Defendants, punitive damages in an amount to be determined by the jury, (3) award PARVATI its reasonable attorneys' fees pursuant to 42 U.S.C. §1988, (4) award PARVATI its costs

pursuant to Fed.R.Civ.P. 54, and (5) grant PARVATI such other and further relief as is proper and just in the premises.

## COUNT VII

## 42 U.S.C. §1983—EQUAL PROTECTION

## (BETHLEHEM Against CITY, JONES, DOTSON and NEWQUIST)

113.  BETHLEHEM adopts and incorporates by reference each of the prior allegations in this Complaint as though fully set forth in this Count VII.

114.  On information and belief, at some point in 2001, the ZONING COMMISSION, and, thereafter, the CITY, approved a proposal by Warrior Insurance Group, Inc. ("Warrior") to sell a parcel of vacant land to Alden Realty Service, Inc. ("Alden") for purposes of constructing a senior housing facility in a non-residential zoning district in Oak Forest.

115.  As a result of this favorable treatment, Alden or one of its affiliated companies, was allowed to construct the Horizon Senior Living Community, a five story, 85-unit senior independent living facility.

116.  BETHLEHEM and Alden were similarly situated persons entitled to equal protection under the law.

117.  The Defendants intentionally treated BETHLEHEM differently from Alden by rejecting BETHLEHEM's proposed use of the Subject Property in a non-residential zoning district in Oak Forest.

118.  The Defendants decision was irrational, wholly arbitrary, and motivated solely by the Defendants' totally illegitimate racial animus toward BETHLEHEM and its shareholders, all of whom are black.  The Defendants'

decision also was motivated by an illegitimate desire to punish BETHLEHEM and/or one or more of its shareholders for refusing to accede to the CITY's demands regarding property taxes.

119.  The Defendants' actions and omissions have caused BETHLEHEM to suffer significant harm and damages.

120.  BETHLEHEM seeks the recovery of its reasonable attorneys' fees pursuant to 42 U.S.C. §1988.

WHEREFORE, BETHLEHEM respectfully prays that this Court (1) award BETHLEHEM compensatory damages in an amount to be determined by the jury, (2) award BETHLEHEM, and assess against the Defendants, punitive damages in an amount to be determined by the jury, (3) award BETHLEHEM its reasonable attorney's fees pursuant to 42 U.S.C. §1988, (4) award BETHLEHEM its costs pursuant to Fed.R.Civ.P. 54, and (5) grant BETHLEHEM such other and further relief as is proper and just in the premises.

## COUNT VIII

### 42 U.S.C. §1983—EQUAL PROTECTION

### (BETHLEHEM Against CITY, JONES, DOTSON and NEWQUIST)

121.  BETHLEHEM adopts and incorporates by reference each of the prior allegations in this Complaint as though fully set forth in this Count VIII.

122.  BETHLEHEM and PARVATI were similarly situated persons entitled to equal protection under the law.

123.  By refusing to issue BETHLEHEM a business license to operate PARVATI's hotel, the Defendants intentionally treated BETHLEHEM differently

from PARVATI and there was no rational basis for the difference in treatment.

124.  The cause of the Defendants' differential treatment is (a) a totally illegitimate racial animus toward BETHLEHEM and its shareholders, all of whom are black, (b) an illegitimate desire to punish BETHLEHEM and/or one or more of its shareholders for refusing to accede to the CITY's demands regarding property taxes, and (c) a desire to punish PARVATI for (i) its objections to the CITY's illegal landscape waste burning operations, (ii) PARVATI's lawful issuance of several Freedom of Information Act requests, (iii) challenging, and ultimately forcing the CITY to withdraw, its bogus housing code violation charges against PARVATI, (iv) contracting to sell the hotel to BETHLEHEM, a black owned and operated entity, and (v) assisting Lockridge in the exercise of his First Amendment rights relating to the posting of a billboard on the Subject Property.

125.  The Defendants' actions and omissions have caused BETHLEHEM to suffer significant harm and damages.

126.  BETHLEHEM seeks the recovery of its reasonable attorneys' fees pursuant to 42 U.S.C. §1988.

WHEREFORE, BETHLEHEM respectfully prays that this Court (1) award BETHLEHEM compensatory damages in an amount to be determined by the jury, (2) award BETHLEHEM, and assess against the Defendants, punitive damages in an amount to be determined by the jury, (3) award BETHLEHEM its reasonable attorneys' fees pursuant to 42 U.S.C. §1988, (4) award BETHLEHEM its costs pursuant to Fed.R.Civ.P. 54, and (5) grant BETHLEHEM

such other and further relief as is proper and just in the premises.

## COUNT IX

### 42 U.S.C. §1983—EQUAL PROTECTION

### (PARVATI and BETHLEHEM Against
### CITY, JONES, DOTSON and NEWQUIST)

127.  Plaintiffs adopt and incorporate by reference each of the prior allegations in this Complaint as though fully set forth in this Count IX.

128.  On information and belief, for several years the CITY has allowed the Terrace Motel in Oak Forest, Illinois, to offer extended stay services.  In particular, the Terrace Motel has allowed homeless teenagers to stay at the motel on an extended stay basis for several months.  The teenagers are participants in a shelter program operated by Aunt Martha's Youth Service Center, Inc., a not-for-profit organization located down the block from the Terrace Motel.

129.  On information and belief, at all relevant times, the CITY has issued a business license to the owners of the Terrace Motel.

130.  BETHLEHEM, PARVATI and the owners of the Terrace Motel are similarly situated persons entitled to equal protection of the law.

131.  The CITY denied BETHLEHEM a business license to operate an extended stay hotel.

132.  By refusing to issue BETHLEHEM a business license to operate an extended stay hotel, the Defendants intentionally treated BETHLEHEM and PARVATI differently from the owners of the Terrace Motel and there was no rational basis related to a legitimate government objective for the difference in

treatment.

133.  The cause of the Defendants' differential treatment is (a) a totally illegitimate racial animus toward BETHLEHEM and its shareholders, all of whom are black, (b) an illegitimate desire to punish BETHLEHEM and/or one or more of its shareholders for refusing to accede to the CITY's demands regarding property taxes, and (c) a desire to punish PARVATI for (i) its objections to the CITY's illegal landscape waste burning operations, (ii) lawful issuance of several Freedom of Information Act requests, (iii) challenging, and ultimately forcing the CITY to withdraw, its bogus housing code violation charges against PARVATI, (iv) contracting to sell the hotel to BETHLEHEM, a black owned and operated entity, and (v) assisting Lockridge in the exercise of his First Amendment rights relating to the posting of a billboard on the Subject Property.

134.  The Defendants' actions and omissions have caused BETHLEHEM and PARVATI to suffer significant harm and damages.

135.  BETHLEHEM and PARVATI seek the recovery of their reasonable attorneys' fees pursuant to 42 U.S.C. §1988.

WHEREFORE, PARVATI and BETHLEHEM respectfully pray that this Court (1) award the Plaintiffs, and each of them, compensatory damages in an amount to be determined by the jury, (2) award the Plaintiffs, and each of them, and assess against the Defendants, punitive damages in an amount to be determined by the jury, (3) award the Plaintiffs, and each of them, their reasonable attorneys' fees pursuant to 42 U.S.C. §1988, (4) award the Plantiffs,

and each of them, their costs pursuant to Fed.R.Civ.P. 54, and (5) grant the Plaintiffs, and each of them, such other and further relief as is proper and just in the premises.

## COUNT X

### 42 U.S.C. §1983—RETALIATION FOR EXERCISE OF FIRST AMENDMENT RIGHTS

### (PARVATI Against CITY, JONES, DOTSON and NEWQUIST)

136.  PARVATI adopts and incorporates by reference each of the prior allegations in this Complaint as though fully set forth in this Count X.

137.  PARVATI's conduct in assisting Lockridge in the exercise of his First Amendment rights relating to the posting of a billboard on the Subject Property was a reason, alone or with other reasons, that moved the Defendants to deny the proposed use of the Subject Property and to deny BETHLEHEM's application for a business license, and the Defendants were motivated by a desire to retaliate against PARVATI for assisting Lockridge in the exercise of his First Amendment rights relating to the proposed billboard on the Subject Property.

138.  The Defendants' actions have caused PARVATI to suffer significant harm and damages.

139.  PARVATI seeks the recovery of its reasonable attorneys' fees pursuant to 42 U.S.C. §1988.

WHEREFORE, PARVATI respectfully prays that this Court (1) award PARVATI compensatory damages in an amount to be determined by the jury, (2) award PARVATI, and assess against the Defendants, punitive damages in an

amount to be determined by the jury, (3) award PARVATI its reasonable attorneys' fees pursuant to 42 U.S.C. §1988, (4) award PARVATI its costs pursuant to Fed.R.Civ.P. 54, and (5) grant PARVATI such other and further relief as is proper and just in the premises.

### COUNT XI

### DECLARATORY JUDGMENT UNDER
### STATE LAW THAT ORDINANCE 2836 IS VOID

### (PARVATI Against CITY)

140.   PARVATI adopts and incorporates by reference each of the prior allegations in this Complaint as though fully set forth in this Count XI.

141.   Ordinance 2836, which purported to amend the CITY's 1999 Zoning Ordinance to make provision for both M1 and M2 districts in what had previously been designated as the M district, was void, invalid, and of no effect, because of the failure of the CITY to give proper notice of the hearing on the proposed amendment pursuant to section 11-13-14 of the Illinois Municipal Code.  65 ILCS 5/11-13-14 (West 2006).

142.   Section 11-13-14 provides, in relevant part, as follows:

"§ 11-13-14.  The regulations imposed and the districts created under the authority of this Division 13 may be amended from time to time by ordinance after the ordinance establishing them has gone into effect, but no such amendments shall be made without a hearing before some commission or committee designated by the corporate authorities.  Notice shall be given of the time and place of the hearing, not more than 30 nor less than 15 days before the hearing, by publishing a notice thereof at least once in one or more newspapers published in the municipality, or, if no newspaper is published therein, then in one or more newspapers with a general circulation within the municipality."

143.   The notice required by this statute is mandatory and jurisdictional,

and if not followed, any attempted amendment will be invalid.  See *Kirk v. Village of Hillcrest*, 15 Ill. App. 3d 415, 304 N.E.2d 452, 454 (2d Dist. 1973); *City of Charleston v. Witmer*, 304 Ill. App. 3d 386, 709 N.E.2d 998, 1003 (4th Dist. 1999).

144.  That the only notice of the hearing published by the CITY relating to the purported amendment of the 1999 Zoning Ordinance which led to the purported enactment of Ordinance 2836 was published in the Daily Southtown newspaper on July 8, 2004, and provided as follows:

"LEGAL NOTICE

CITY of OAK FOREST
PLANNING and ZONING COMMISSION

Notice is hereby given that a public hearing will be held by the Planning and Zoning Commission of the City of Oak Forest on Wednesday, 21 July 2004, at 8:00 PM in Oak Forest City Hall, 15440 South Central Avenue, Oak Forest, Illinois, at which time and place, the Planning and Zoning Commission will conduct a public hearing to review a proposed amendment to the City of Oak Forest Zoning Ordinance, with new and/or substantially revised provisions, generally described below:

1.  A comprehensive revision of Chapter 17.34 Manufacturing Districts, and all Sections therein; providing for the separation of different types of principal industrial uses, activities and/or processes through the creation of two new, separate zoning classifications - M-1 light Industrial and M-2 Heavy Industrial - enabling different degrees of regulatory control in accordance with specific nuisances and/or impacts associated with said uses; and

2.  The delineation of specific performance standards for industrial uses, activities and/or processes; assuring a greater level of protection and oversight against negative impacts associated with said uses, while stipulating and clarifying for existing industrial owners and managers, the actual standards and regulatory thresholds to be enforced by the City of Oak Forest.

This amendment has been prepared by the City of Oak Forest's

Community Development Department, Oak Forest, Illinois, serving as petitioner.  Questions concerning the content of this proposed revision may be addressed prior to the public hearing, by contacting Robert McNeill, Community Development Coordinator, 15440 S Central Avenue, Oak Forest, IL  60452, or by telephone, at 708-687-4050.

All persons desiring to appear and be heard for or against said petition may appear at the scheduled public hearing and be heard.

James Stuewe, Chairman
City of Oak Forest Planning and Zoning Commission."

145.  The foregoing notice of hearing did not meet the requirements of section 11-13-14 of the Illinois Municipal Code because it was not published until July 8, 2004, which was less than 15 days prior to the hearing.

146.  Another reason why the notice of hearing did not meet the requirements of section 11-13-14 is that notice was given only with regard to a revision of Chapter 17.34 of the 1999 Zoning Ordinance, no notice was given of a proposed revision or deletion of Chapter 17.36 of the 1999 Zoning Ordinance, which described the uses that were permitted and conditionally permitted in the M district, and Ordinance 2836 purported to delete Chapter 17.36 of the 1999 Zoning Ordinance.

147.  Another reason why the notice of hearing did not meet the requirements of section 11-13-14 is that notice was given only with regard to a revision of Chapter 17.34 of the 1999 Zoning Ordinance, no notice was given of a proposed revision of Chapter 17.06 of the 1999 Zoning Ordinance, and Ordinance 2836 purported to provide for the amendment of Chapter 17.06.

148.  Because the purported amendment to the 1999 Zoning Code purportedly enacted by Ordinance 2836 is void and invalid, the zoning law as it

existed prior to the purported amendment is still in effect.

149.  Under the zoning law as it existed prior to the purported amendment by Ordinance 2836, the Subject Property was zoned M, and "[h]ighway oriented commercial/retail uses, as determined by the planning and zoning commission" were permitted uses in an M district, subject to the approval of a site plan by the ZONING COMMISSION.

150.  An extended stay hotel and a senior living facility are "[h]ighway oriented commercial uses" and should be and should have been permitted on the Subject Property.

151.  On information and belief, the CITY is taking the position that the purported amendment to the 1999 Zoning Ordinance made by Ordinance Number 2836 is valid and effective; accordingly, a real and substantial controversy exists between PARVATI and the CITY, and, pursuant to the provisions of section 2-701 of the Code of Civil Procedure of Illinois (735 ILCS 5/2-701 (West 2006)), it is proper and just that this Court enter a declaratory judgment setting forth the rights of the parties herein.

WHEREFORE, PARVATI respectfully prays that this Court (1) declare that Ordinance 2836, which purported to amend the CITY's 1999 Zoning Ordinance to make provision for both M1 and M2 districts in what had previously been designated as the M district, was void, invalid, and of no effect; (2) declare that, insofar as permitted uses in M districts are concerned, the zoning law of the CITY is currently governed by the former Chapter 17.36 which was illegally deleted, (3) declare that PARVATI and any person or entity

to whom PARVATI may sell the Subject Property is entitled to a license to use the Subject Property as an extended stay hotel or senior living facility, and (4) award PARVATI its costs herein.

### JURY DEMAND

Plaintiffs demand trial by jury on all matters and counts set forth in this Complaint where permitted by law.

BETHLEHEM ENTERPRISE INC., and PARVATI CORP.


By:    _____/s/ John R. Wimmer_____
                Attorney for the Plaintiffs










JOHN R. WIMMER
Attorney at Law
928 Warren Avenue
Downers Grove, Illinois  60515
(630) 810-0005
Attorney No. 03125600