IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PARVATI CORP., an Illinois corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| -vs- | ) ) | |
| CITY OF OAK FOREST, an Illinois municipal corporation; STEVE JONES, individually and in his official capacity as City Administrator of the City of Oak Forest; ADAM DOTSON, individually and in his official capacity as the Coordinator of the Community Development Department of the City of Oak Forest; and DAVID NEWQUIST, individually and in his official capacity as Assistant Coordinator of the Community Development Department of the City of Oak Forest; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 08 C 702 |
| | ) | Judge Amy J. St. Eve |
| Defendants. | ) | Magistrate Judge Maria Valdez |

## SECOND AMENDED COMPLAINT

NOW COMES the Plaintiff, PARVATI CORP., an Illinois corporation

("PARVATI"), by and through its attorney, JOANIE RAE WIMMER, and

complaining of the Defendants, CITY OF OAK FOREST, an Illinois municipal

corporation; STEVE JONES, individually and in his official capacity as City

Administrator of the City of Oak Forest; ADAM DOTSON, individually and in

his official capacity as the Coordinator of the Community Development

Department of the City of Oak Forest; and DAVID NEWQUIST, individually and

in his official capacity as Assistant Coordinator of the Community Development Department of the City of Oak Forest, allege and state as follows:

## PARTIES, INDIVIDUALS, AND ENTITIES INVOLVED

1. BETHLEHEM ENTERPRISE INC. ("BETHLEHEM"), is an Illinois corporation with its principal place of business in Harvey, Illinois. The shareholders of BETHLEHEM are the Bethlehem Temple Missionary Baptist Church ("Bethlehem Church"), Pastor J.C. Smith ("Pastor Smith"), and his son, Jeffrey Smith. All members of the Bethlehem Church, including Pastor Smith and Jeffrey Smith, are black.

2. Bethlehem Church first opened in 1969 and since then its membership has grown to in excess of 1,000 members. Bethlehem Church is located in Harvey, Illinois, approximately 5.4 miles east of the property that is the subject of this lawsuit. According to 2000 U.S. Census data, the population of Harvey is approximately 80 percent black.

3. PARVATI is an Illinois corporation with its principal place of business in Oak Forest, Illinois. The shareholders and officers of PARVATI are Balkrishna Patel and Nirmala Patel, husband and wife. Balkrishna Patel and Nirmala Patel are U.S. citizens who are Asian/Pacific Islanders from India.

4. Amit Patel is the son of Balkrishna Patel and Nirmala Patel. At all relevant times, Amit Patel served as manager for PARVATI. Amit Patel is a U.S. citizen who is an Asian/Pacific Islander from India.

5. Defendant CITY OF OAK FOREST ("CITY") is an Illinois home rule municipal corporation, organized and existing under the laws of the State of

Illinois, with its principal place of business in Oak Forest, Illinois.  According to 2000 U.S. Census data, the population of Oak Forest is 3.6 percent black and 90.4 percent white.

6.  The City of Oak Forest Planning and Zoning Commission (the "ZONING COMMISSION") is a duly constituted commission established by the Oak Forest City Council.

7.  All members of the ZONING COMMISSION are appointed by the Mayor of the City with the approval of the City Council.

8.  Defendant STEVE JONES is an individual who was the City Administrator of the CITY at all relevant times.

9.  Defendant ADAM DOTSON is an individual who is the Coordinator of the CITY's Community Development Department, and who succeeded Robert McNeill in that position on or after November 22, 2005.

10.  Defendant DAVID NEWQUIST is an individual who has been the Assistant Coordinator of the CITY's Community Development Department at all relevant times.

## JURISDICTION

11.  The federal claims made in this action arise under and are based on the United States Constitution, 42 U.S.C. §1983, and other federal laws. Subject matter jurisdiction of the federal claims is based on 28 U.S.C. §1331 and §1343.  This Court has supplemental jurisdiction over the claims for declaratory relief and damages brought under Illinois law pursuant to 28 U.S.C. §1367.

## VENUE

12.  Venue is proper in this Court pursuant to 28 U.S.C. §1391(b).

## FACTUAL ALLEGATIONS

13.  On or about October 1999, PARVATI purchased 3.76 acres of vacant land (the "Subject Property") within the corporate limits of the CITY.

### City Refuses to Permit Parvati
### to Use a Retention Pond that the City
### Allows Another Private Landowner to Use

14.  Sometime in and around 1999 the CITY refused to allow PARVATI to direct storm water from the Subject Property into a retention pond, which was owned and operated by the CITY, and located within approximately 1,000 feet of the Subject Property.  In connection with said refusal, the CITY claimed that the retention pond had insufficient capacity to hold storm water from the Subject Property.

15.  Because the CITY refused to allow PARVATI to direct storm water from the Subject Property into said retention pond, PARVATI was forced to construct a retention pond on the Subject Property.

16.  In and around 2000, the CITY allowed U. S. GLU-LAM, INC., a private owner of nearby real property, to direct storm water from its real property into said retention pond as part of an approval by the CITY of Phase II of a certain project of U. S. GLU-LAM, INC.

17.  The storm water runoff from the real property of U. S. GLU-LAM, INC. was twice as great as the storm water runoff from the Subject Property.

18.  On information and belief, the shareholders and officers of U. S.

GLU-LAM, INC. are white.

### Parvati's Site Plan is Approved and Construction of Hotel Commences

19.  At the time PARVATI acquired the Subject Property, it was located in the CITY's Limited Manufacturing District pursuant to the Oak Forest Zoning Ordinance of 1999 (the "1999 Zoning Ordinance").

20.  Pursuant to Section 17.36.020 of the 1999 Zoning Ordinance, "[h]ighway oriented commercial/retail uses, as determined by the planning and zoning commission" were deemed permitted uses in the Limited Manufacturing District, subject to approval of a site plan.

21.  On or about February 29, 2000, at a meeting of the City Council, the City Council of the CITY approved a final site plan for PARVATI to construct a 60-room hotel on a portion of the Subject Property.

22.  In early May 2000, PARVATI commenced construction of the hotel on the Subject Property.  At the time, PARVATI estimated that construction would be completed in October 2001.

### City Selects Site Adjacent to the Subject Property to Conduct its Landscape Waste Burning Activities

23.  Sometime prior to July 2000, the CITY decided to conduct landscape waste burning.  At that time there were several vacant land parcels within the corporate limits of the CITY, which were not in the immediate vicinity of the Subject Property, which were available for sale, and on which the CITY could have conducted the landscape waste burning.

24.  The CITY did not purchase any of said vacant land parcels; instead

the CITY selected a Vacant Lot immediately adjacent to the Subject Property (the "Vacant Lot"), which was owned by a private party, to conduct the CITY's landscape waste burning activities.

25.  The owner of the Vacant Lot owned other vacant land parcels within the corporate limits of the CITY, which were not in the immediate vicinity of the Subject Property, on which the CITY could have conducted landscape waste burning activities.

### Parvati Objects to the City's Illegal Landscape Waste Burning Activities

26.  In late July 2000, shortly after PARVATI began construction on the Subject Property, one or more persons driving trucks from the CITY's Public Works Department had begun to burn landscaping waste on the Vacant Lot. Several construction workers complained to PARVATI that the black smoke from the burning activities caused working conditions on the Subject Property to become intolerable.  Due to the noxious, black smoke, construction of the hotel came to a halt for several days.

27.  Balkrishna Patel and Amit Patel learned that employees from the CITY's Public Works Department were storing and burning landscaping waste on the Vacant Lot pursuant to an agreement with the landowner of the Vacant Lot.

28.  In early August 2000, Amit Patel placed a telephone call to Luke Kent, the CITY's Building Commissioner, and requested that the CITY cease and desist from storing and burning the landscaping waste on the Vacant Lot. Without committing to stop the burning activities, Mr. Kent agreed to visit the

- 6 -

site.

29.  Within a few days, Mr. Kent met with Balkrishna Patel and Amit Patel at the Vacant Lot.  During the meeting, Mr. Kent said that the CITY would not stop burning landscape waste on the Vacant Lot.  Mr. Kent told Balkrishna Patel and Amit Patel that the CITY had a permit from the Illinois Environmental Protection Agency ("IEPA") to burn landscape waste on the vacant lot.  In fact, the CITY did not have a permit from the IEPA to burn landscape waste on the Vacant Lot, and was not otherwise authorized to do so.

30.  During the same meeting, Balkrishna Patel and Amit Patel told Mr. Kent that PARVATI intended to purchase the Vacant Lot in order to stop the burning activities.  In response, Mr. Kent threatened PARVATI and said that Mayor Patrick Gordon would invoke the CITY's eminent domain powers and condemn the Vacant Lot if PARVATI bought it.

31.  In September 2000, Balkrishna Patel entered into a contract with the adjacent landowner to acquire the Vacant Lot.  Soon thereafter, the seller of the Vacant Lot demanded that the CITY discontinue its landscape waste burning activities and vacate the Vacant Lot.  Immediately thereafter, Mr. Kent called Amit Patel and requested a meeting at City Hall with PARVATI.

32.  Amit Patel and Balkrishna Patel agreed to meet with the CITY a few days thereafter.  In attendance at the second meeting for the CITY were Mr. Kent, Mayor Patrick Gordon, and Superintendent of Public Works, Michael Feeley.  Mr. Feeley pled guilty on November 10, 2004, to federal charges of racketeering and filing false U.S. tax returns relating to the use of his position

as Superintendent of Public Works for the CITY to solicit and accept bribes and kickbacks from various CITY contractors from 1997 through at least January of 2002.  Mr. Feeley received a prison sentence of nine (9) years imposed by the U.S. District Court for the Northern District of Illinois.

33.  During the meeting, Mayor Gordon asked PARVATI if the CITY could continue burning the landscape waste until April 2001, the month in which elections were to be held in Oak Forest for mayoral and aldermanic positions. Mayor Gordon was up for re-election in April 2001.  Because construction of the hotel was ongoing and the hotel was expected to open in January 2001, PARVATI refused the Mayor's request to allow the landscape waste burning to continue.

34.  On November 29, 2000, Balkrishna Patel closed on the purchase of the Vacant Lot.

35.  On information and belief, the CITY thereafter continued its illegal landscape waste burning activities in nearby Markham, Illinois.

36.  The CITY's landscape waste burning activities in nearby Markham led to charges being filed against the CITY by the Cook County State's Attorney's Office and the IEPA, resulting in a fine of approximately $35,000 being imposed on the CITY.

## Parvati Protests its Unequal Treatment by City

37.  Sometime in 2000, because of U. S. GLU-LAM, INC.'s project referred to in paragraph 16 hereof, PARVATI experienced storm water flooding of the Subject Property.

38.  PARVATI complained of the flooding to Mr. Kent, the CITY's then Building Commissioner, but no remedial or corrective action was taken by the CITY.

39.  On or about August 28, 2001, Amit Patel appeared at a City Council meeting of the CITY on behalf of PARVATI, and complained to the corporate authorities of the CITY about the flooding and of the lack of attention by the CITY to the flooding problem, and on the same date Amit Patel, on behalf of PARVATI, submitted a letter to City Council complaining about the flooding.

40.  At the City Council meeting on or about August 28, 2001, Amit Patel also complained of the CITY's unequal treatment of PARVATI and U. S. GLU-LAM, INC. with reference to the retention pond.

### Parvati Completes Construction of the Ramada

41.  In January 2001, PARVATI completed construction of the hotel and the CITY issued PARVATI a business license.  At all relevant times since completing construction, PARVATI has operated a hotel on a portion of the Subject Property.

### The City Continues a Campaign of
### Harassment and Retaliation Against Parvati

42.  After PARVATI opened the Ramada, the CITY continued its campaign of harassment and retaliation against PARVATI.

### Unwarranted City Fire Inspections

43.  From approximately February 2001 through no earlier than March 2002, Captain Jim Berger, the former City Fire Inspector, conducted approximately fifty (50) unannounced "inspections" of the Ramada.  None of

these inspections identified any critical issues, and only one required an appearance in the City housing court.

### Staged Call to Convert the Ramada to a "Detention Facility"

44.  In the summer of 2003, PARVATI received an unsolicited telephone call from a contract intermediary of the United States Department of Homeland Security ("DHS").  The representative stated that Robert McNeill, the former Coordinator of the City's Community Development Department "(CDD"), contacted him and stated that PARVATI was interested in leasing the Ramada as a "detention facility" to the DHS.  In fact, PARVATI had never expressed any such interest to anyone, including Mr. McNeill.

45.  Shortly after receiving the telephone call from the DHS representative, a newspaper article appeared in the Star newspaper in which Mr. McNeill stated that PARVATI would probably reject the DHS offer. PARVATI was never contacted for the article.  The owners of PARVATI were deeply offended by the newspaper article.

### Parvati Assists Lockridge Outdoor Advertising in the Exercise of its First Amendment Right to Freedom of Speech

46.  In June of 2003, PARVATI entered into a contract with Jon W. Lockridge, d/b/a Lockridge Outdoor Advertising Agency ("Lockridge"), whereby PARVATI granted Lockridge an easement on a portion of the Subject Property for the purpose of erecting, using, operating, maintaining, and replacing outdoor advertising structures (an advertising billboard) for the purpose of engaging in commercial speech.

47.  Under said contract, the easement granted was contingent on Lockridge obtaining all necessary permits and governmental approvals for his billboard.

48.  The contract required PARVATI to assist Lockridge and to take such reasonable steps as Lockridge should request in order that Lockridge might be able to erect the billboard and engage in commercial speech, including, but not limited to, supporting any request by Lockridge for permits or other approvals relating to the billboard.

49.  That thereafter PARVATI assisted Lockridge in connection with its application to the CITY to post its signs by providing Lockridge with a survey of the Subject Property, a list of all adjoining property owners, and a copy of the current zoning ordinances, and by accompanying Lockridge to the City Hall when he filed his applications.

50.  On September 17, 2003, the CITY denied Lockridge's applications to post his signs.

51.  Said denial by the CITY of Lockridge's applications to post its signs was in violation of the First Amendment, and an abridgment of Lockridge's right to freedom of speech.

### Parvati's Proposed Use of the Property as a Senior Living Facility

52.  On or about October 21, 2003, Balkrishna Patel and Amit Patel met with Mr. McNeill to discuss their proposal to convert the Ramada to an assisted living facility due to, *inter alia*, the negative economic impact on hotels in the area from the arrival of new hotels in the vicinity of Oak Forest after February

2001.

53.  On or about November 20, 2003, PARVATI entered into an agreement with Inland Real Estate ("Inland") to list the Subject Property for sale for $4,800,000.  Inland believed that the highest and best use for the Subject Property was as a senior independent living facility, and marketed the Subject Property accordingly.

54.  The Inland listing agents, Joe Esselman and Kevin List, arranged a meeting which took place shortly before November 20, 2003, at the CITY's main hall with Mayor Gordon, Mr. McNeill and Defendant DAVID NEWQUIST to discuss the listing of the Subject Property for sale as senior independent living and to determine whether the CITY would support such a use at the Subject Property.  Mr. List was a member of the CITY's Economic Development Committee at the time of the meeting.  During this meeting, the CITY stated that it would support senior independent living at the Subject Property if an experienced operator was presented.

## Lockridge Sues the City in Federal Court

55.  On or about November 20, 2003, Lockridge filed in the United States District Court for the Northern District of Illinois, Eastern Division, a complaint against the CITY, alleging that the denial of his applications constituted an abridgment of his right to freedom of speech under the First Amendment to the United States Constitution, and seeking damages, injunctive relief, and attorneys' fees.  Said complaint was docketed as Case No. 03 CV 8325.

56.  Lockridge's lawsuit against the CITY was pending until September

29, 2004, the case ending when the CITY agreed to allow Lockridge to post his signs.

**The City Rejects Parvati's Proposed
Use of the Property as a Senior Living Facility**

57.   On or about November 21, 2003, the CDD rejected PARVATI's proposal to convert the Ramada to an assisted living facility ostensibly because, *inter alia,* the CITY did not feel PARVATI had the expertise to convert the hotel to an assisted living facility.

58.   In connection with its desire to convert the hotel to an assisted living facility, PARVATI requested a meeting with the CDD, which was held in mid-December of 2003 at City Hall.  Balkrishna Patel and Amit Patel attended the meeting on behalf of PARVATI.  To the surprise of PARVATI, Mr. McNeill had assembled Mayor Gordon, the City Police Chief, the City Fire Chief and Assistant Fire Chief, the City Administrator, the City Building Commissioner and Defendant DAVID NEWQUIST.

59.   During this meeting, and in reference to PARVATI's proposal, Mayor Gordon specifically asked PARVATI "why are you looking for help from us, when you never helped us in the past."  When PARVATI mentioned that Inland was marketing the Subject Property as a senior living possibility, Mr. McNeill threatened to contact Inland and have them delist the property.  Mr. McNeill also chastised PARVATI and stated that the CITY should never have let PARVATI construct the Ramada.  Defendant DAVID NEWQUIST also claimed that PARVATI had been the subject of over 300 complaints relating to code enforcement issues at the Ramada.  Defendant DAVID NEWQUIST, however,

refused to turn over copies of the complaints to PARVATI, despite representing
that he claimed to be carrying a folder with the complaints at the meeting.
PARVATI later issued a Freedom of Information Act request for the complaints,
but none were turned over by the CITY.

## The City Interferes With Parvati's Listing

60.  Shortly after the CDD meeting, Mr. McNeill contacted Inland Real
Estate and demanded that Inland remove the listing for the Subject Property.
Inland, in fact, removed the listing and ceased all marketing efforts.  Inland did
not seek PARVATI's prior agreement to remove the listing.

## The Original Contract Between Parvati and Bethlehem Community

61.  In March 2004, Pastor Smith entered into a contract with PARVATI
on behalf of Bethlehem Community Development Corporation ("Bethlehem
Community") to acquire the Subject Property contingent upon securing any
zoning approval from the CITY.

62.  In May of 2004, Pastor Smith first informed the CITY of his plans to
acquire the Subject Property for use as a senior living facility.

## The City Conditions Approval of the Proposed Use
## on Bethlehem's Agreement to Forego Property Tax Benefits

63.  In late June of 2004, Amit Patel and Pastor Smith met with Mr.
McNeill and Defendant DAVID NEWQUIST, the Assistant Community
Development Director, to review the proposal of Bethlehem Community to
acquire the Subject Property and operate a senior living facility.  John Morrow
of Pacor Mortgage was also present.

64.  During the meeting, Mr. McNeill sought an agreement on behalf of

the CITY that Pastor Smith would (a) accept an industrial classification for the Subject Property for real estate tax purposes rather than any lower classification that would otherwise be assigned by the Cook County Assessor, (b) forego any right to appeal the tax classification or assessed value of the Subject Property, and (c) forego any property tax exemptions.  Mr. McNeill stated that the CITY would be inclined to support Pastor Smith's proposed use if he agreed to these conditions.  Pastor Smith rejected the CITY's request.  Mr. McNeill then told Pastor Smith "don't waste your time and effort to proceed with the project because the CITY would not support it."  Mr. McNeill raised the property tax issues with the members of the ZONING COMMISSION on at least two subsequent occasions on November 23, 2004, and April 6, 2005.

### The City Purports to Amend its Zoning Ordinance

65.  On or about July 7, 2004, the CDD petitioned the ZONING COMMISSION to recommend the enactment of an amendment to the 1999 Zoning Ordinance relating to the Limited Manufacturing District.  On July 21, 2004, the ZONING COMMISSION recommended to the City Council that it approve the amendment.

66.  On or about August 11, 2004, the CITY purported to enact Ordinance 2836, styled "An Ordinance Amending the Zoning Ordinance (2381) of the City of Oak Forest, Cook County, Illinois, to Provide for Multiple Zoning Classifications Regulating Manufacturing Uses, Activities and Processes" ("Ordinance 2836").  Ordinance 2836 purportedly established regulations for two different zoning districts, M-1 Light Industrial Zoning District and M-2

- 15 -

Heavy Industrial Zoning District in what had been the existing Limited Manufacturing Distict, but no delineation was made in Ordinance 2836 of which lots that were formerly in the Limited Manufacturing District were to be designated as M-1 Light Industrial Zoning District or M-2 Heavy Industrial Zoning District, nor was a new zoning map included in Ordinance 2836. Because no such delineation had been made, Ordinance 2836 was void and meaningless.

### Bethlehem Church Applies to the City for a Text Amendment of the Zoning Ordinance So That a Senior Living Facility May Be Operated on the Subject Property

67.  On or about March 15, 2005, Bethlehem Church filed an application with the CITY seeking a text amendment of the zoning ordinance to permit the operation on the Subject Property of a senior living facility.

68.  On or about April 6, 2005, the ZONING COMMISSION held a hearing on said application for text amendment, at the conclusion of which the ZONING COMMISSION unanimously voted to recommend denial of said application.

69.  On or about May 10, 2005, the City Council of the CITY followed the recommendation of the ZONING COMMISSION and voted to deny said application without holding any further hearing.

### The City's Additional Threats of Condemnation

70.  On or about April 6, 2005, Lieutenant Shaunessby of the CITY's Police Department told Amit Patel that the CITY was considering condemning the Vacant Lot for use by its Police Department as a gun range, and that the

CITY had already secured budget approval for the acquisition by eminent domain.

## The Contract Between Parvati and Bethlehem

71.  On or about July 1, 2005, PARVATI and BETHLEHEM entered into a contract whereby PARVATI would sell the hotel to BETHLEHEM for $4,500,000.  This contract superseded the prior agreement between PARVATI and Bethlehem Community, and specifically added all existing fixtures and furniture to the sale.  The contract was contingent upon BETHLEHEM securing approval from the CITY to operate a business.

72.  By mid-2005, BETHLEHEM had secured financing to acquire the hotel and was at all times ready and willing to close on the sale of the hotel.

## The Bogus Violation Notice Issued by the City to Parvati

73.  On or about August 31, 2005, an anonymous writer sent a letter to the Cook County Department of Public Health (incorrectly addressed to Oak Forest, Illinois, instead of its correct location in Oak Park, Illinois) regarding a "Request Inspection of Ramada Oak Forest."  The letter closed by stating "I felt a lot of tax evasion going on at this facility."

74.  On or about September 2, 2005, Defendant DAVID NEWQUIST of the CDD issued a written directive to a litany of individuals to "investigate" the anonymous complaint and to "take corrective action."  The directive was sent to the CITY's Health Department, Ordinance Enforcement Officer, Police Department, Fire Department, and Building Department, with copies to the Mayor, Alderman Chinino, and Defendant STEVE JONES, the City

Administrator.

75.   On or about September 15, 2005, PARVATI received a "Notice of Violation" signed by James Bosvay, an Ordinance Enforcement Officer for the CITY.  According to the notice, Officer Bosvay claimed to have conducted an inspection of the Ramada on September 2, 2005, at 9:00 a.m.  The Notice of Violations stated that Officer Bosvay found the following violations:  "5.38 Hotel Sanitation.  Numerous Complaints.  9.08.080.  Hotel guests creating disturbances.  Numerous Police actions."  Officer Bosvay ordered a representative of the Ramada to appear for a hearing on the alleged violations on September 22, 2005, at City Council Chambers.

76.   Amit Patel was present at the Ramada for the entire day on September 2, 2005.  Officer James Bosvay was not present in the Ramada on that day.

77.   On September 16 and 19, 2005, Amit Patel sent separate FOIA requests to the CITY seeking information forming the basis for the purported inspection and charges.

78.   On September 22, 2005, during the hearing on the Notice of Violation, Officer Bosvay represented to the hearing officer that "his complaint file against the Ramada is bigger than this room" and that, according to Mr. McNeill, PARVATI had initiated litigation against the CITY, which was not true. Due to the pending FOIA requests, the hearing was continued to October 17, 2005, and then again to November 17, 2005.

79.   Approximately one week before the scheduled November 17, 2005,

hearing, the CITY informed Amit Patel that it did not have any documents relating to the purported housing code violations.  Mr. McNeill and Defendant DAVID NEWQUIST were copied on the CITY's response to the FOIA request.

80.  On November 17, 2005, Officer Bosvay informed the hearing officer that the CITY would be dismissing the charges against PARVATI.  Officer Bosvay then admitted that he "just wanted the Patels to know that I was asked to bring them here."

81.  On information and belief, Mr. McNeill resigned from the CDD five days later on November 22, 2005.

## **Bethlehem Application for a Business License**

82.  On or about October 6, 2005, BETHLEHEM filed an application with the CITY for a commercial business license to operate an extended stay hotel on the Subject Property.

83.  On or about November 21, 2005, Defendant STEVE JONES, the City Administrator, denied BETHLEHEM's license application, purporting to find that the proposed use was equivalent to a "multi-family" or "apartment" use under the City's zoning ordinance, as purportedly amended by Ordinance 2836, and that the proposed use would result in the replacement of one non-conforming use (the existing hotel) with another non-conforming use (an "apartment").

84.  On December 20, 2005, PARVATI and BETHLEHEM filed and served an appeal with the ZONING COMMISSION challenging the City Administrator's November 21, 2005, decision.

85.  After BETHLEHEM's application for a business license was denied, Amrish Mahajan, the President of Mutual Bank (PARVATI's lender), suggested to Balkrishna Patel and Amit Patel that they meet with Jerry Galloway and Dan Shoman who could offer assistance in appealing the CITY's denial of BETHLEHEM's license.  Mr. Galloway was a public relations/government affairs specialist, and Mr. Shoman had then recently finished serving as the director of Senator Barack Obama's successful 2004 campaign.  PARVATI agreed to a meeting.

86.  In early December 2005, Balkrishna Patel and Amit Patel met with Messrs. Mahajan, Galloway, and Shoman in the lobby of the Ramada.  Messrs. Galloway and Shoman recommended having a meeting with the CITY to discuss the proposed use of the facility by BETHLEHEM.  Balkrishna Patel and Amit Patel agreed to a meeting.  Mr. Shoman thereafter arranged a meeting with Defendant STEVE JONES, the City Administrator, to take place on January 23, 2006.

87.  Prior to the meeting scheduled for January 23, 2006, Mr. Shoman informed Balkrishna Patel and Amit Patel that he had spoken with "high level" City staff members who confirmed that "black ownership makes the proposal [of BETHLEHEM] worse" and that "City Hall did not want black ownership of the Ramada."

88.  Defendant STEVE JONES, the City Administrator, and Defendant ADAM DOTSON, the CDD Coordinator, were present at the meeting on January 23, 2006.  Balkrishna Patel, Amit Patel and Messrs. Galloway and Shoman

were present on behalf of PARVATI, along with PARVATI's attorney, Kenneth

Kubiesa.  During the meeting, Mr. Galloway informed Defendant STEVE

JONES that the racial mix of the property would not change under

BETHLEHEM's proposed use, and that, in fact, approximately 90 percent of the

Ramada's guests had been black.  Defendant STEVE JONES interrupted and

said "I thought this meeting had nothing to do with BETHLEHEM," and

Defendant STEVE JONES asked Amit Patel "Do you have another buyer?"

Amit Patel answered "No, we do not have another buyer."  At the time of this

meeting, PARVATI still had a contract to sell the Subject Property to

BETHLEHEM.

89.  The ZONING COMMISSION is charged with the responsibility to

interpret the City's zoning odinance, including hearing any appeals from an

administrative order, requirement, decision, or determination made by any

authorized official of the CITY having jurisdiction under the zoning ordinance.

90.  On February 1, 2006, the ZONING COMMISSION conducted a

hearing on Plaintiffs' appeal.  On that same date, the ZONING COMMISSION

unanimously denied the appeal of PARVATI and BETHLEHEM and entered its

final decision on the matter.

91.  The decision of the ZONING COMMISSION has adversely affected the

rights and privileges of PARVATI in relation to the Subject Property.

92.  The decision of the ZONING COMMISSION on an appeal from an

administrative order, requirement, decision, or determination under the zoning

ordinance by the City Administrator is deemed in all instances to be a final

administrative determination subject to judicial review in accordance with the Illinois Administrative Review Law, 735 ILCS 5/3-101 *et seq.*

93.  There would have been no impact on the public health, safety, or welfare, or on any of the surrounding properties from the proposed use of the Subject Property, except in a positive way.

**Parvati's Application for a Special
Use Permit for an Extended Stay Hotel**

94.  Through the end of 2007, the CITY had not properly or legally made a delineation as to which lots that were formerly in the Limited Manufacturing District were to be designated as M-1 Light Industrial Zoning District or M-2 Heavy Industrial Zoning District.

95.  The corporate authorities of the City purported to delineate the areas that had been zoned "Limited Manufacturing District" as either "M-1 Light Industrial Zoning District" or "M-2 Heavy Industrial Zoning District" on or about March 28, 2006, when the CITY passed a resolution (No. 2006-03-0004R) adopting an "update" to the zoning map.

96.  Said resolution was void and invalid because it was a resolution, not an ordinance, and all amendments and changes of zoning districts must be made by ordinance and "even a resolution by a city council 'cannot substitute for the passage of a formal ordinance which is required by the zoning statute." See *Oak Forest Mobile Home Park, Inc. v. City of Oak Forest*, 27 Ill. App. 3d 303, 326 N.E.2d 473, 479 (1st Dist. 1975).

97.  In addition, said resolution was void and invalid because no amendments changing zoning districts " 'shall be made without a hearing

before some commission or committee designated by the corporate authorities' " following "notice by publication in a newspaper published in the community prior to such hearings" (see *Oak Forest Mobile Home Park, Inc. v. City of Oak Forest*, 27 Ill. App. 3d 303, 326 N.E.2d 473, 479 (1st Dist. 1975)), and the required notice was not given and the required hearing was not held.

98.  In addition, in and around March of 2007, the CITY passed a second resolution purporting to delineate the areas that had been zoned Limited Manufacturing District as either M-1 Light Industrial Zoning District or M-2 Heavy Industrial Zoning District, but said resolution was void and invalid for the same reasons as Resolution No. 2006-03-0004R.

99.  In July of 2007 the CITY, pursuant to Ordinance No. 2007-07-01140, adopted Appendix A to its Zoning Ordinance which listed an "extended stay hotel" as a special use permitted in an M-2 Heavy Industrial Zoning District.

100.  On or about August 24, 2007, PARVATI made an application to the CITY for a special use permit for an "extended stay hotel" use of the Subject Property.

101.  On or about September 4, 2007, Defendant ADAM DOTSON, Defendant DAVID NEWQUIST, and Katie Forystek submitted to the corporate authorities of the CITY a memorandum seeking "Approval of a proposed Ordinance 2007-09-01220 Zoning Text Amendment Correction and Clarification, amending the Zoning Ordinance 2007-07-01140" to remove "extended stay hotel" as a special use in M-2 Heavy Industrial Zoning District.

102.  In support of seeking the approval of Ordinance 2007-09-01220, the memorandum stated that CITY staff became aware of a "[s]crivener's error as well as a confusing note that pertains to certain properties in the M2 Heavy Manufacturing [sic] District" in Ordinance 2007-07-01140.

103.  On or about September 10, 2007, the CITY adopted Ordinance No. 2007-09-01220 which purported to revise Appendix A to remove an extended stay hotel as a special use in the M-2 Heavy Industrial Zoning District, and said ordinance became law on or about September 11, 2007, when the Mayor signed the ordinance.

104.  No notice was given and no hearing was held by the ZONING COMMISSION of the proposed amendment to Appendix A which purported to remove "extended stay hotel" as a special use in an M-2 Heavy Industrial Zoning District.

105.  The CITY refused to process PARVATI's application for special use permit for an "extended stay hotel" use of the Subject Property, and on or about September 12, 2007, Katie Forystek returned PARVATI's application by letter dated that date.  A copy of said letter is attached hereto as Exhibit A and incorporated herein by reference.

106.  By virtue of the foregoing PARVATI has exhausted all administrative remedies available to it, and any further pursuit of such remedies from the CITY would be futile.

**Color of Law**

107.  At all relevant times, the Defendants, and each of them, acted

under color of state law.

**COUNT I**

**Violation of 42 U.S.C. §1981**

**(PARVATI against CITY,
JONES, DOTSON and NEWQUIST)**

108.  Plaintiff adopts and incorporates by reference each of the prior allegations in this Complaint as though fully set forth in this Count I.

109.  Each of the Defendants and each of the members of the ZONING COMMISSION knew that the contract between PARVATI and BETHLEHEM was contingent upon BETHLEHEM obtaining a license from the CITY to operate a business on the Subject Property.

110.  Defendant STEVE JONES, the City Administrator, in deciding BETHLEHEM's license application, did so on the basis that the Subject Property had been zoned M-2 Heavy Industrial Zoning District under Ordinance 2836 even though there was absolutely no basis to conclude that the Subject Property had been zoned M-2 Heavy Industrial Zoning District because no delineation had been made by the corporate authorities of the CITY of which of the lots that were formerly in the Limited Manufacturing District were to be designated as M-1 Light Industrial Zoning District or M-2 Heavy Industrial Zoning District.

111.  At the time Defendant STEVE JONES decided BETHLEHEM's license application, he knew that the Subject Property had not been zoned M-2 Heavy Industrial Zoning District.

112.  Defendant STEVE JONES, in deciding BETHLEHEM's license

application, treated the Subject Property as having been zoned M-2 Heavy

Industrial Zoning District, even though he knew that it had not been so zoned,

in order to deny said application because BETHLEHEM was owned and

operated entirely by blacks and PARVATI was owned and operated entirely by

Asian/Pacific Islanders.

113.  That at the hearing before the ZONING COMMISSION on the

matter of the denial of BETHLEHEM's application for business license,

Defendant ADAM DOTSON intentionally gave false testimony indicating that

the Subject Property had been zoned M-2 Heavy Industrial Zoning District in

order to secure an affirmance of said denial because BETHLEHEM was owned

and operated entirely by blacks and PARVATI was owned and operated entirely

by Asian/Pacific Islanders.

114.  That at the hearing before the ZONING COMMISSION on the

matter of the denial of BETHLEHEM's application for business license,

Defendant DAVID NEWQUIST intentionally gave false testimony indicating that

a portion of the area previously zoned Limited Manufacturing District had been

rezoned M-1 Light Industrial Zoning District in order falsely to suggest that a

delineation had been made of which of the lots that were formerly in the

Limited Manufacturing District were to be designated as M-1 Light Industrial

Zoning District or M-2 Heavy Industrial Zoning District.

115.  That Defendant DAVID NEWQUIST did so in order to secure an

affirmance of the denial of BETHLEHEM's application for a business license

because BETHLEHEM was owned and operated entirely by blacks and

PARVATI was owned and operated entirely by Asian/Pacific Islanders.

116.  The ZONING COMMISSION, in affirming the decision of Defendant STEVE JONES, the City Administrator, in denying BETHLEHEM's license application, did so on the basis that the Subject Property had been zoned M-2 Heavy Industrial Zoning District under Ordinance 2836 even though there was absolutely no basis to conclude that the Subject Property had been zoned M-2 Heavy Industrial Zoning District because no delineation had been made by the corporate authorities of the CITY of which of the lots that were formerly in the Limited Manufacturing District were to be designated as M-1 Light Industrial Zoning District and M-2 Heavy Industrial Zoning District.

117.  That the individual members of the ZONING COMMISSION knew that the Subject Property had not been zoned M-2 Heavy Industrial Zoning District because any change in the zoning designation of particular lots within the corporate limits of the CITY would have had to have been considered initially by the ZONING COMMISSION and the individual members of the ZONING COMMISSION knew that they had not considered or recommended to the corporate authorities of the CITY a change in the zoning designation of any particular lots that had previously been designated in the Limited Manufacturing District.

118.  The ZONING COMMISSION, acting by and through its individual members, in affirming the decision of Defendant STEVE JONES, which denied BETHLEHEM's license application, treated the Subject Property as having been zoned M-2 Heavy Industrial Zoning District, even though said individual

members knew that it had not been so zoned, in order to deny said application because BETHLEHEM was owned and operated entirely by blacks and PARVATI was owned and operated entirely by Asian/Pacific Islanders.

119. There was a persistent and widespread pattern of discrimination against BETHLEHEM and other blacks and PARVATI and other Asian/Pacific Islanders by officials and employees of the CITY, which was known by the corporate authorities of the CITY and other policy-making officials of the CITY who allowed it to continue. Said persistent and widespread pattern included, but was not limited to, the harassment against and differential treatment of PARVATI described herein; the difference in treatment by the CITY between Bethlehem Church and Oak Forest Properties, LLC, a non-black owned company, as set forth in paragraphs 67-69 and 147-150 herein; and the initial denial in and around 2000 of one or more building permits sought by Valley Kingdom Ministries, a black church (said permit or permits were not granted until after Jesse Jackson and others publicly protested the treatment of blacks by the CITY).

120. By their conduct in rejecting the proposed use and denying BETHLEHEM a business license, each of the Defendants prevented a contingency from being fulfilled in the contract between PARVATI and BETHLEHEM, rendering the contract unenforceable.

121. By virtue of their actions, each of the Defendants deprived BETHLEHEM and PARVATI on account of race, of the same right to make and enforce contracts as is enjoyed by white citizens, in violation of 42 U.S.C.

§1981, and, in light of, among other things, the persistent and widespread pattern described above, the CITY is liable for the violation.

122.  The Defendants' actions have caused PARVATI to suffer significant harm and damages.

123.  PARVATI seeks the recovery of its reasonable attorneys' fees pursuant to 42 U.S.C. §1988.

WHEREFORE, PARVATI respectfully prays that this Court (1) award the Plaintiff compensatory damages in an amount to be determined by the jury, (2) award the Plaintiff, and assess against the individual Defendants, punitive damages in an amount to be determined by the jury, (3) award the Plaintiff its reasonable attorneys' fees pursuant to 42 U.S.C. §1988, (4) award the Plaintiff its costs pursuant to Fed.R.Civ.P. 54, and (5) grant the Plaintiff such other and further relief as is proper and just in the premises.

## COUNT II

## VIOLATION OF 42 U.S.C. §1982

### (Parvati Against CITY, JONES, DOTSON and NEWQUIST)

124.  Plaintiff adopts and incorporates by reference each of the prior paragraphs in this Complaint as though fully set forth in this Count II.

125.  By virtue of their actions, the Defendants deprived BETHLEHEM and PARVATI, on account of race, of the same right to purchase, sell, hold, and convey real estate and personal property as is enjoyed by white citizens, in violation of 42 U.S.C. §1982, and in light of, among other things, the persistent and widespread pattern described in paragraph 119, the CITY is liable for the

violation.

126.  The Defendants' actions have caused PARVATI to suffer significant harm and damages.

127.  PARVATI seeks the recovery of its reasonable attorneys' fees pursuant to 42 U.S.C. §1988.

WHEREFORE, PARVATI respectfully prays that this Court (1) award the Plaintiff compensatory damages in an amount to be determined by the jury, (2) award the Plaintiff, and assess against the individual Defendants, punitive damages in an amount to be determined by the jury, (3) award the Plaintiff its reasonable attorneys' fees pursuant to 42 U.S.C. §1988, (4) award the Plaintiff its costs pursuant to Fed.R.Civ.P. 54, and (5) grant the Plaintiff such other and further relief as is proper and just in the premises.

## COUNT III

## 42 U.S.C. §1983—EQUAL PROTECTION OF THE LAWS

### (Racial Discrimination)

### (PARVATI Against CITY, JONES, DOTSON and NEWQUIST

128.  Plaintiff adopts and incorporates by reference each of the prior paragraphs in this Complaint as though fully set forth in this Count III.

129.  By their conduct in connection with the rejection of the proposed use and the denial of BETHLEHEM's application for a business license, each of the Defendants invidiously discriminated against BETHELEHEM and PARVATI based on and because of race in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and, in light of,

among other things, the persistent and widespread pattern described in paragraph 119, the CITY is liable for the violation.

130.  The Defendants' actions have caused PARVATI to suffer significant harm and damages.

131.  PARVATI seeks the recovery of its reasonable attorneys' fees pursuant to 42 U.S.C. §1988.

WHEREFORE, PARVATI respectfully prays that this Court (1) award the Plaintiff compensatory damages in an amount to be determined by the jury, (2) award the Plaintiff, and assess against the individual Defendants, punitive damages in an amount to be determined by the jury, (3) award the Plaintiff its reasonable attorneys' fees pursuant to 42 U.S.C. §1988, (4) award the Plaintiff its costs pursuant to Fed.R.Civ.P. 54, and (5) grant the Plaintiff such other and further relief as is proper and just in the premises.

## COUNT IV

## 42 U.S.C. §1983—DUE PROCESS

### (PARVATI Against CITY, JONES, DOTSON and NEWQUIST)

132.  Plaintiff adopts and incorporates by reference each of the prior paragraphs in this Complaint as though fully set forth in this Count IV.

133.  The failure of the CITY, in connection with Ordinance 2836, to delineate which of the lots that were formerly in the Limited Manufacturing District were to be designated as M-1 Light Industrial Zoning District or M-2 Heavy Industrial Zoning District resulted in Ordinance 2836 being, not only void and meaningless, but unconstitutionally vague in violation of the Due

Process Clause of the Fourteenth Amendment to the United States Constitution.

134.  That the actions of the ZONING COMMISSION and its members, and Defendants STEVE JONES, ADAM DOTSON, and DAVID NEWQUIST recounted above, purported to enforce Ordinance 2836 which was unconstitutionally vague under the Due Process Clause of the Fourteenth Amendment, to deny, and/or to secure the denial of, and/or to uphold the denial of BETHLEHEM's application for business license, thereby preventing a contingency from being fulfilled in the contract between PARVATI and BETHLEHEM, rendering the contract unenforceable.

135.  The enforcement of said unconstitutionally vague ordinance was the result of an official policy of the CITY in that it resulted from the passage of the unconstitutionally vague ordinance by the corporate authorities of the CITY.

136.  BETHLEHEM's application for a commercial business license to operate an extended stay hotel would have been granted under the law in effect prior to the purported adoption of Ordinance 2836 because, under the prior law, Bethlehem's proposed use of the Subject Property as an extended stay hotel would have been a permitted use pursuant to Section 17.36.020 of the 1999 Zoning Ordinance under which "[h]ighway oriented commercial/retail uses, as determined by the Planning and Zoning Commission" were deemed "permitted" uses in the Limited Manufacturing District, subject to approval of a site plan.

137.  The Defendants' actions have caused PARVATI to suffer significant harm and damages.

138.  PARVATI seeks the recovery of its reasonable attorneys' fees pursuant to 42 U.S.C. §1988.

WHEREFORE, PARVATI respectfully prays that this Court (1) award the Plaintiff compensatory damages in an amount to be determined by the jury, (2) award the Plaintiff, and assess against the individual Defendants, punitive damages in an amount to be determined by the jury, (3) award the Plaintiff its reasonable attorneys' fees pursuant to 42 U.S.C. §1988, (4) award the Plaintiff its costs pursuant to Fed.R.Civ.P. 54, and (5) grant the Plaintiff such other and further relief as is proper and just in the premises.

## COUNT V

## 42 U.S.C. §1983—DUE PROCESS

## (PARVATI Against CITY, DOTSON and NEWQUIST)

139.  Plaintiff adopts and incorporates by reference each of the prior paragraphs in this Complaint as though fully set forth in this Count V.

140.  Because the CITY had failed, through the end of 2007, properly or legally to delineate which of the lots that were formerly in the Limited Manufacturing District were to be designated as M-1 Light Industrial Zoning District or M-2 Heavy Industrial Zoning District, as of August 24, 2007, the date of the submission of PARVATI's application for a special use permit for an "extended stay hotel" use of the Subject Property, through the date the CITY returned said application, September 12, 2007, Ordinance 2836, which had

purported to establish regulations for two different zoning districts, M-1 Light Industrial Zoning District and M-2 Heavy Industrial Zoning District in what had been the existing Limited Manufacturing District, continued to be void, meaningless, and unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

141.  That the actions of Defendant ADAM DOTSON, Defendant DAVID NEWQUIST, and Katie Forystek, recounted in paragraphs 101-105 hereof, which resulted in PARVATI's inability to operate an extended stay hotel on the Subject Property, purported to be based on and to enforce Ordinance 2836, which was unconstitutionally vague under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

142.  The enforcement of said unconstitutionally vague ordinance was the result of an official policy of the CITY in that it resulted from the passage of the unconstitutionally vague ordinance by the corporate authorities of the CITY, and the continuing failure of the CITY properly or legally to delineate which of the lots that were formerly in the Limited Manufacturing District were to be designated as M-1 Light Industrial Zoning District or M-2 Heavy Industrial Zoning District.

143.  PARVATI would have been able to use the Subject Property as an "extended stay hotel" under the law in effect prior to the purported adoption of Ordinance 2836 because, under the prior law, an extended stay hotel would have been a permitted use pursuant to Section 17.36.020 of the 1999 Zoning Ordinance under which "[h]ighway oriented commercial/retail uses, as

determined by the Planning and Zoning Commission" were deemed "permitted" uses in the Limited Manufacturing District, subject to approval of a site plan.

144.  The Defendants' actions have caused PARVATI to suffer significant harm and damages.

145.  PARVATI seeks the recovery of its reasonable attorneys' fees pursuant to 42 U.S.C. §1988.

WHEREFORE, PARVATI respectfully prays that this Court (1) award the Plaintiff compensatory damages in an amount to be determined by the jury, (2) award the Plaintiff, and assess against the individual Defendants, punitive damages in an amount to be determined by the jury, (3) award the Plaintiff its reasonable attorneys' fees pursuant to 42 U.S.C. §1988, (4) award the Plaintiff its costs pursuant to Fed.R.Civ.P. 54, and (5) grant the Plaintiff such other and further relief as is proper and just in the premises.

## **COUNT VI**

## **42 U.S.C. §1983—EQUAL PROTECTION**

### **(Class of One)**

### **(PARVATI Against CITY)**

146.  Plaintiff adopts and incorporates by reference each of the prior paragraphs in this Complaint as though fully set forth in this Count VI.

147.  Mark Clifton, an owner of real property which had been in the CITY's Limited Manufacturing District, and which officials and employees of the CITY claimed was zoned M-2 Heavy Industrial District pursuant to Ordinance 2836, had entered into a contract sometime in 2004 with Oak Forest

Properties, LLC, an Illinois limited liability company, whereby Mark Clifton was to sell the real property to Oak Forest Properties, LLC.  Said contract was contingent upon the obtaining by Oak Forest Properties, LLC of approval by the CITY of a petition to allow the construction of a retail center as a planned unit development ("PUD") on the real property.

148.  That Section 17.06.010 of the Zoning Ordinance of the CITY provides for the following different types of zoning districts:  special recreation districts, residential districts, commercial districts, mixed use districts, and industrial and manufacturing districts.

149.  Pursuant to Section 17.46.030A of the Zoning Ordinance, PUD's may be approved as a special use, but only in residential, commercial, and mixed use zoning districts, and may not be approved in industrial and manufacturing districts.

150.  On or about September 15, 2004, the ZONING COMMISSION held a hearing on the petition of Oak Forest Properties, LLC for a PUD comprising a retail shopping center on the real property purportedly zoned M-2 Heavy Industrial Zoning District, and the ZONING COMMISSION voted unanimously to recommend approval of the petition.

151.  On or about October 12, 2004, the CITY, by Ordinance No. 2847, followed the recommendation of the ZONING COMMISSION and approved the petition of Oak Forest Properties, LLC for a PUD comprising a retail shopping center on the real property.

152.  As a result of the approval of said petition, Mark Clifton was able to

sell his real property to Oak Forest Properties, LLC.

153.  PARVATI and Mark Clifton were similarly situated in that each was an owner of real property in a district which the CITY claimed was zoned M-2 Heavy Industrial Zoning District, and each had entered into a contract to sell its or his real estate contingent on the buyer's ability to obtain approval for the buyer's proposed use of the real property, and, in the case of both PARVATI and Mark Clifton, the buyer's proposed use of the real property was purportedly not permitted in an M-2 Heavy Industrial Zoning District.

154.  That PARVATI and Mark Clifton were treated differently in that the approval sought by PARVATI's buyer, BETHLEHEM, was denied, and the approval sought by Mark Clifton's buyer was granted.

155.  That the difference in treatment was not rationally related to a legitimate government objective, and, in fact, was the result of vindictive retaliation towards PARVATI by the CITY and its officials and employees resulting from the transactions between PARVATI and the CITY set forth in this Complaint which took place prior to the denial of BETHLEHEM's application for business license.  As set forth above, there was a persistent and widespread pattern of vindictive retaliation against PARVATI by officials and employees of the CITY, which was known by the corporate authorities of the CITY and other policy-making officials of the CITY who allowed it to continue.

156.  The Defendants' actions have caused PARVATI to suffer significant harm and damages.

157.  PARVATI seeks the recovery of its reasonable attorney's fees

pursuant to 42 U.S.C. §1988.

WHEREFORE, PARVATI respectfully prays that this Court (1) award PARVATI compensatory damages in an amount to be determined by the jury, (2) award PARVATI, and assess against the Defendants, punitive damages in an amount to be determined by the jury, (3) award PARVATI its reasonable attorneys' fees pursuant to 42 U.S.C. §1988, (4) award PARVATI its costs pursuant to Fed.R.Civ.P. 54, and (5) grant PARVATI such other and further relief as is proper and just in the premises.

## COUNT VII

## 42 U.S.C. §1983—EQUAL PROTECTION

### (Class of One)

### (PARVATI Against CITY)

158.  Plaintiff adopts and incorporates by reference each of the prior paragraphs in this Complaint as though fully set forth in this Count VII.

159.  On information and belief, sometime after October 12, 2004, and prior to 2006, Oak Forest Properties, LLC entered into leases with prospective tenants of its retail shopping center on the real property it purchased from Mark Clifton.

160.  On information and belief, said leases were contingent upon the issuance by the CITY to said prospective tenants of business licenses.

161.  Prior to 2006, the CITY issued business licenses to seven different tenants for said retail shopping center, all for uses which were commercial uses, which, according to Ordinance 2836, were not permitted uses in an M-2

Heavy Industrial Zoning District.

162.  PARVATI and Oak Forest Properties, LLC were similarly situated in that each was an owner of real property in a district which the CITY claimed was zoned M-2 Heavy Industrial Zoning District, and each had entered into a agreement to transfer an interest in said real property to another or others contingent on the transferee's ability to obtain a business license or licenses, and, in the case of both PARVATI and Oak Forest Properties, LLC, the transferee's or transferees' proposed use of the real property was not permitted in an M-2 Heavy Industrial Zoning District.

163.  That PARVATI and Oak Forest Properties, LLC were treated differently in that the business license sought by PARVATI's buyer, BETHLEHEM, was denied, and the business licenses sought by the tenants of Oak Forest Properties, LLC were granted.

164.  That the difference in treatment was not rationally related to a legitimate government objective, and, in fact, was the result of vindictive retaliation towards PARVATI by the CITY and its officials and employees resulting from the transactions between PARVATI and the CITY set forth in this Complaint which took place prior to the denial of BETHLEHEM's application for business license.

165.  As set forth above, there was a persistent and widespread pattern of vindictive retaliation against PARVATI by officials and employees of the CITY, which was known by the corporate authorities of the CITY and other policy-making officials of the CITY who allowed it to continue.

166.  The Defendants' actions have caused PARVATI to suffer significant harm and damages.

167.  PARVATI seeks the recovery of its reasonable attorneys' fees pursuant to 42 U.S.C. §1988.

WHEREFORE, PARVATI respectfully prays that this Court (1) award PARVATI compensatory damages in an amount to be determined by the jury, (2) award PARVATI, and assess against the Defendants, punitive damages in an amount to be determined by the jury, (3) award PARVATI its reasonable attorneys' fees pursuant to 42 U.S.C. §1988, (4) award PARVATI its costs pursuant to Fed.R.Civ.P. 54, and (5) grant PARVATI such other and further relief as is proper and just in the premises.

## COUNT VIII

### 42 U.S.C. §1983—RETALIATION FOR EXERCISE OF FIRST AMENDMENT RIGHTS

### (PARVATI Against CITY, JONES, DOTSON and NEWQUIST)

168.  Plaintiff adopts and incorporates by reference each of the prior paragraphs in this Complaint as though fully set forth in this Count VIII.

169.  PARVATI's conduct in assisting Lockridge in the exercise of his First Amendment rights relating to the posting of a billboard on the Subject Property, and PARVATI's conduct in protesting its unequal treatment by the CITY as set forth in paragraphs 37-40 hereof, were reasons, alone or with other reasons, that moved each of the individual Defendants named in this count to take the actions he took in relation to the denial of BETHLEHEM's application for a business license, and said Defendants were motivated by a desire to

retaliate against PARVATI for assisting Lockridge in the exercise of his First Amendment rights relating to the proposed billboard on the Subject Property and for protesting unequal treatment by the CITY.

170.  As set forth above, prior to the denial of BETHLEHEM's application for business license, there was a persistent and widespread pattern of vindictive retaliation against PARVATI by officials and employees of the CITY, which was known by the corporate authorities of the CITY and other policy-making officials of the CITY who allowed it to continue.

171.  The Defendants' actions have caused PARVATI to suffer significant harm and damages.

172.  PARVATI seeks the recovery of its reasonable attorneys' fees pursuant to 42 U.S.C. §1988.

WHEREFORE, PARVATI respectfully prays that this Court (1) award PARVATI compensatory damages in an amount to be determined by the jury, (2) award PARVATI, and assess against the Defendants, punitive damages in an amount to be determined by the jury, (3) award PARVATI its reasonable attorneys' fees pursuant to 42 U.S.C. §1988, (4) award PARVATI its costs pursuant to Fed.R.Civ.P. 54, and (5) grant PARVATI such other and further relief as is proper and just in the premises.

## COUNT IX

### DECLARATORY JUDGMENT UNDER
### STATE LAW THAT ORDINANCE 2836 IS VOID

### (PARVATI Against CITY)

173.  PARVATI adopts and incorporates by reference each of the prior

paragraphs in this Complaint as though fully set forth in this Count IX.

174.  Ordinance 2836, which purported to amend the CITY's 1999 Zoning Ordinance to make provision for both M-1 Light Industrial Zoning Districts and M-2 Heavy Industrial Zoning Districts in what had previously been designated as the Limited Manufacturing District, was void, invalid, and of no effect, because of, among other things, the failure of the CITY to give proper notice of the hearing on the proposed amendment pursuant to section 11-13-14 of the Illinois Municipal Code.  65 ILCS 5/11-13-14 (West 2006).

175.  Section 11-13-14 provides, in relevant part, as follows:

> "§ 11-13-14.  The regulations imposed and the districts created under the authority of this Division 13 may be amended from time to time by ordinance after the ordinance establishing them has gone into effect, but no such amendments shall be made without a hearing before some commission or committee designated by the corporate authorities.  Notice shall be given of the time and place of the hearing, not more than 30 nor less than 15 days before the hearing, by publishing a notice thereof at least once in one or more newspapers published in the municipality, or, if no newspaper is published therein, then in one or more newspapers with a general circulation within the municipality."

176.  The notice required by this statute is mandatory and jurisdictional, And, if not followed, any attempted amendment will be invalid.  See *Kirk v. Village of Hillcrest*, 15 Ill. App. 3d 415, 304 N.E.2d 452, 454 (2d Dist. 1973); *City of Charleston v. Witmer*, 304 Ill. App. 3d 386, 709 N.E.2d 998, 1003 (4th Dist. 1999).

177.  The only notice of the hearing published by the CITY relating to the purported amendment of the 1999 Zoning Ordinance which led to the purported enactment of Ordinance 2836 was published in the Daily Southtown

newspaper on July 8, 2004, and provided as follows:

"LEGAL NOTICE

CITY of OAK FOREST
PLANNING and ZONING COMMISSION

Notice is hereby given that a public hearing will be held by the
Planning and Zoning Commission of the City of Oak Forest on
Wednesday, 21 July 2004, at 8:00 PM in Oak Forest City Hall,
15440 South Central Avenue, Oak Forest, Illinois, at which time
and place, the Planning and Zoning Commission will conduct a
public hearing to review a proposed amendment to the City of Oak
Forest Zoning Ordinance, with new and/or substantially revised
provisions, generally described below:

1.  A comprehensive revision of Chapter 17.34 Manufacturing
Districts, and all Sections therein; providing for the separation of
different types of principal industrial uses, activities and/or
processes through the creation of two new, separate zoning
classifications - M-1 light Industrial and M-2 Heavy Industrial -
enabling different degrees of regulatory control in accordance with
specific nuisances and/or impacts associated with said uses; and

2.  The delineation of specific performance standards for industrial
uses, activities and/or processes; assuring a greater level of
protection and oversight against negative impacts associated with
said uses, while stipulating and clarifying for existing industrial
owners and managers, the actual standards and regulatory
thresholds to be enforced by the City of Oak Forest.

This amendment has been prepared by the City of Oak Forest's
Community Development Department, Oak Forest, Illinois, serving
as petitioner.  Questions concerning the content of this proposed
revision may be addressed prior to the public hearing, by
contacting Robert McNeill, Community Development Coordinator,
15440 S Central Avenue, Oak Forest, IL  60452, or by telephone,
at 708-687-4050.

All persons desiring to appear and be heard for or against said
petition may appear at the scheduled public hearing and be heard.

James Stuewe, Chairman
City of Oak Forest Planning and Zoning Commission."

178.  The foregoing notice of hearing did not meet the requirements of

section 11-13-14 of the Illinois Municipal Code because it was not published until July 8, 2004, which was less than 15 days prior to the hearing.

179.  Another reason why the notice of hearing did not meet the requirements of section 11-13-14 is that notice was given only with regard to a revision of Chapter 17.34 of the 1999 Zoning Ordinance, no notice was given of a proposed revision or deletion of Chapter 17.36 of the 1999 Zoning Ordinance, which described the uses that were permitted and conditionally permitted in the Limited Manufacturing District, and Ordinance 2836 purported to delete Chapter 17.36 of the 1999 Zoning Ordinance.

180.  Another reason why the notice of hearing did not meet the requirements of section 11-13-14 is that notice was given only with regard to a revision of Chapter 17.34 of the 1999 Zoning Ordinance, no notice was given of a proposed revision of Chapter 17.06 of the 1999 Zoning Ordinance, and Ordinance 2836 purported to provide for the amendment of Chapter 17.06.

181.  To this date, the CITY has not properly or legally delineated the areas that had been zoned Limited Manufacturing District as either M-1 Light Industrial Zoning District or M-2 Heavy Industrial Zoning District.

182.  Because the purported amendment to the 1999 Zoning Code purportedly enacted by Ordinance 2836 is void and invalid, the zoning law as it existed prior to the purported amendment is still in effect.

183.  Under the zoning law as it existed prior to the purported amendment by Ordinance 2836, the Subject Property was zoned Limited Manufacturing District, and "[h]ighway oriented commercial/retail uses, as

determined by the planning and zoning commission" were permitted uses in such a district, subject to the approval of a site plan by the ZONING COMMISSION.

184.  An extended stay hotel and a senior living facility are "[h]ighway oriented commercial uses" which would have been permitted on the Subject Property if the prior law had been applied.

185.  On information and belief, the CITY is taking the position that the purported amendment to the 1999 Zoning Ordinance made by Ordinance Number 2836 is valid and effective, and, therefore, neither the CITY nor the ZONING COMMISSION will consider whether an extended stay hotel is a "[h]ighway oriented commercial/retail use[s], as determined by the planning and zoning commission" pursuant to the law prior to its purported amendment by Ordinance 2836; accordingly, a real and substantial controversy exists between PARVATI and the CITY, and, pursuant to the provisions of section 2-701 of the Code of Civil Procedure of Illinois (735 ILCS 5/2-701 (West 2006)), it is proper and just that this Court enter a declaratory judgment setting forth the rights of the parties herein.

WHEREFORE, PARVATI respectfully prays that this Court (1) declare that Ordinance 2836, which purported to amend the CITY's 1999 Zoning Ordinance to make provision for both M-1 Light Industrial Zoning Districts and M-2 Heavy Industrial Zoning Districts in what had previously been designated as the Limited Manufacturing District, was void, invalid, and of no effect; (2) declare that, insofar as permitted uses in the Limited Manufacturing District

are concerned, the zoning law of the CITY is currently governed by the former Chapter 17.36 which was illegally deleted, and (3) award PARVATI its costs herein.

**COUNT X**

**CLAIMS UNDER THE ILLINOIS CONSTITUTION
FOR DAMAGES FOR ENACTMENT AND
ENFORCEMENT OF VOID AND
UNCONSTITUTIONAL ORDINANCE (2836)**

**(PARVATI Against CITY,
JONES, DOTSON and NEWQUIST)**

186.  PARVATI adopts and incorporates by reference each of the prior paragraphs in this Complaint as though fully set forth in this Count X.

187.  That the denial of a business license to BETHLEHEM, based on a purported ordinance that was invalid and unconstitutional, caused PARVATI to suffer significant harm and damages.

188.  In addition, the CITY's refusal to process PARVATI's application, submitted on or about August 24, 2007, for special use permit for an "extended stay hotel" use of the Subject Property, based on the purported ordinance that was invalid and unconstitutional, caused PARVATI to suffer significant harm and damages.

WHEREFORE, PARVATI respectfully prays that this Court (1) award the Plaintiff compensatory damages in an amount to be determined by the jury, and (2) award the Plaintiff its costs pursuant to Fed.R.Civ.P. 54, and (3) grant the Plaintiff such other and further relief as is proper and just in the premises.

## **JURY DEMAND**

Plaintiff demands trial by jury on all matters and counts set forth in this

Complaint where permitted by law.

PARVATI CORP.


By:   _____/s/ Joanie Rae Wimmer_____
                 Attorney for the Plaintiff


JOANIE RAE WIMMER
Attorney at Law
928 Warren Avenue
Downers Grove, Illinois  60515
(630) 810-0005
Attorney No. 03125600