# AGREEMENT FOR
# DEED IN LIEU OF FORECLOSURE

This **Agreement** (the "Agreement") is made and entered into this 18th day of March, 2008, by and between Parvati Corp., an Illinois corporation ("Parvati"), Balkrishna A. Patel and Nirmalaben B. Patel (herein sometimes referred to collectively as "Guarantors") and Mutual Bank ("LENDER").

## Recitals

A. Parvati and Balkrishna A. Patel are the fee simple title owners in and to certain real property, commonly known as 4375 Frontage Road, Oak Forest, Illinois, together with all improvements situated thereon (collectively "Property"), located within the County of Cook and State of Illinois. This real property is more particularly described in EXHIBIT "A" attached to and incorporated by reference to this Agreement.

B. LENDER is the owner and holder of a promissory note ("Note #1"), executed by Parvati and guaranteed by Balkrishna A. Patel and Nirmalaben B. Patel and dated October 25, 2001, in the original amount of Three Million Fifty Thousand Dollars and No Cents ($3,050,000.00), and modified and replaced by a Memorandum Of Loan Modification Agreement executed by Parvati and guaranteed by Balkrishna A. Patel and Nirmalaben B. Patel and dated February 25, 2003 and recorded on March 26, 2003 in the Office of the Recorder of Deeds of Cook County as Document Number 0030406283, to reestablish the outstanding principal indebtedness of the original principal amount of $3,050,000.00. Note #1 evidences a loan agreement ("Loan #1") in that amount.

C. Loan #1 is further evidenced and secured by a Mortgage ("Mortgage #1"), executed by Parvati dated October 25, 2001 and recorded on October 29, 2001 in the Office of the Recorder of Deeds of Cook County as Document Number 0011007785; an Assignment Of Rents And Leases executed by Parvati and dated October 25, 2001 and recorded on October 29, 2001 in the Office of the Recorder of Deeds of Cook County as Document Number 0011007786; and a Security Agreement executed by Parvati and dated October 25, 2001. Mortgage #1 establishes a lien on and security interest in the property. That Balkrishna A. Patel and Nirmalaben B. Patel guaranteed Note #1.

D. LENDER is the owner and holder of a promissory note (Note #2), executed by Parvati dated March 17, 2005, in the original amount of Five Hundred Thousand Dollars and Zero Cents ($500,000.00). Note #2 evidences a loan agreement ("Loan #2") in that amount. Note #2 has been modified, amended, and renewed from time to time, most recently by a Renewal Note (Note #3) executed by Parvati dated June 17, 2007, in the amount of Two Hundred Fifteen Thousand Two Hundred Thirty-Seven Dollars and Fifty-One Cents ($215,324.51). Note #3 evidences a loan agreement ("Loan #3") in that amount.

E. Loan #2 is further evidenced and secured by a Mortgage ("Mortgage #2"), executed by Balkrishna A. Patel, individually, dated March 17, 2005 and recorded on April 12, 2005 in the Office of the Recorder of Deeds of Cook County as Document Number 051023319; and modified by Modification of Mortgage executed by Balk[rishna]

**EXHIBIT A**

1

A. Patel, individually, dated March 17, 2007, and recorded on April 16, 2007 in the Office of the Recorder of Deeds of Cook County as Document Number 0710660025; and further modified by Modification of Mortgage executed by Parvati dated June 17, 2007 and recorded on January 8, 2008 in the Office of the Recorder of Deeds of Cook County as Document Number 0800809073. Mortgage #2 establishes a lien on and security interest in the Property.

   F. A material default, as defined by said Notes and Mortgages and guarantees, has occurred by reason of the failure of Parvati to pay installments of principal and interest due and owing to LENDER pursuant to the terms and conditions of said Notes, Loan Modification Agreement, Mortgages and guarantees.

   1. Defaults occurred in the payments due on Loan #1 and Loan #2.

   2. The unpaid principal balance on Loan #1 is Two Million Five Hundred Sixty-Five Thousand One Hundred Sixty-Eight Dollars and Fifty-Seven Cents ($2,565,168.57).

   3. The unpaid principal balance on Loan #2 is Two Hundred Eleven Thousand Seventy-Four Dollars and Sixty-Two Cents ($211,074.62).

   G. The outstanding principal, accrued interest, together with all other costs, charges and fees, (collectively "Mortgage Debt"), are secured by said Mortgages and guarantees.

   H. The Mortgage Debt is justly due, owing and delinquent and there is no offset, defense, or counterclaim that Parvati has or could sustain in connection therewith.

   I. LENDER has demanded that Parvati pay the Mortgage Debt but Parvati has failed to do so.

   J. LENDER has the immediate right to pursue all of its rights and remedies pursuant to said Loans and Mortgages.

   K. Parvati has requested that, in view of the lack of equity in the Property and to avoid further time-consuming, expensive and needless litigation, LENDER accept a settlement, pursuant to which the Property would be transferred to LENDER by Parvati. Parvati would be released from any personal liability for a money or deficiency judgment upon said Loans and Mortgages. LENDER is willing to accept such a settlement, but only upon the terms and conditions hereinafter set forth.

   L. Parvati and Balkrishna A. Patel acknowledge that transfer of the Property to LENDER, together with a release from further obligation under said Notes and Mortgages, are of direct and substantial benefit to them and such transaction constitutes fair and adequate consideration for their entry into this transaction.

   M. LENDER acknowledges that transfer of the Property to it, including all rights of equitable and statutory redemption, without the necessity of litigation, is of direct and

2

substantial benefit to it, and constitutes fair and adequate consideration for LENDER entry into this transaction.

N. Parvati, Guarantors and LENDER acknowledge and agree that the transfer of the Property is for reasonably equivalent value.

## Agreement

NOW THEREFORE, in consideration of the sum of the payment recited above, together with the mutual covenants and promises contained in this Agreement and other good and valuable consideration, including the release by LENDER of Parvati from personal liability in Recital K, the receipt and sufficiency of which is mutually acknowledged, Parvati, Guarantors, and LENDER agree as follows:

## Article 1
### Conveyance

Instead of repaying in cash all sums evidenced secured by the Loan and in lieu of LENDER's foreclosure of its liens on the property:

A. At the closing or transfer, Parvati and Balkrishna A. Patel, individually, shall execute and deliver to LENDER, in a form and content satisfactory to LENDER, Parvati's warranty deed ("Deed"), in recordable form, conveying the Property to LENDER, and any other documents reasonably requested in connection therewith. This conveyance shall be free of any right of redemption and otherwise be in accordance with this agreement.

B. In consideration of Parvati's and Balkrishna A. Patel's execution and delivery of the Deed, and the performance of other Obligations set forth in this Agreement, LENDER hereby releases and discharges Parvati, Balkrishna A. Patel and Nirmalaben B. Patel, and Parvati hereby discharges LENDER, from any and all obligations under said Loans and Mortgages.

C. This Conveyance is executed in mutual good faith between the parties and is not intended to hinder, delay or defraud any creditor of Parvati or Balkrishna A. Patel.

D. The Deed is not given as security for the payment of money or indebtedness, or as security of any kind or nature.

E. It is the express intent of the parties to this Agreement that all liens and security interests created, represented or perfected by said Loans and Mortgages shall be retained by LENDER and shall not be released or canceled at the Closing or transfer. In no event shall the liens or security of the Mortgage or any of the other Loan documents against the property merge with the fee title, but rather, shall remain at all times separated and distinct, notwithstanding any union of interest in LENDER. The lien of LENDER on the property established by said Loans and Mortgages shall be and shall remain at all times a valid and continuous lien upon the Property until and unless this lien is released by LENDER.

F. It is the express intent of the parties that this Agreement of Conveyance shall not be deemed a waiver by LENDER of any claim of priority pursuant to said Loans and Mortgages over any other liens, mortgages, security interests, or encumbrances of any kind of nature, now existing or hereafter placed upon the Property, or any part of it.

## Article 2
### Parvati's and Guarantor's
### Warranties, Representations, and Covenants

Parvati and Guarantors warrant and represent, upon which warranties and representations LENDER has relied and will continue to rely, that as of the date of this Agreement and as of the Closing or transfer:

A. Parvati or Balkrishna A. Patel are the sole owners of fee simple title to the Property.

B. They have the power, capacity and authority to execute and deliver this Agreement and the transfer documents to LENDER.

C. They have not transferred, nor will transfer, by sale, assignment, or otherwise, to any person, partnership, corporation, or other entity, all or any part of any right, title, or interest which they may have in and to the property to the date of this Agreement other than pursuant to said Loans and Mortgages.

D. Except as set forth in this Agreement, they have not entered into any contract to sell, lease or mortgage the property, or any portion or interest of it. There are no leases or any oral or written contracts or agreements in effect or in existence with respect to the Property.

E. The transfer documents convey to LENDER good and marketable title to the Property, free and clear of all liens, including judgment liens, security interests, encumbrances, agreements, encroachments, overlaps, special assessments, claims, leases, tenancies, adverse interest, federal or state taxes or defects except: (a) the liens and security interests established pursuant to said Loans and Mortgages; (b) public easements shown in the Commitment for Title Insurance for a portion of the Property, No. 1401 008431801 with an effective date of February 7, 2008; and (c) public easements shown in the Commitment for Title Insurance for a portion of the Property, No. 1401 008426917 with an effective date of February 14, 2008.

F. There are no employment, union, purchase, brokerage, service, management or maintenance contracts, agreements, obligation, commitments, or arrangements, written or oral, with respect to the Property which cannot be canceled or terminated by LENDER without the payment of a premium or penalty or upon not more than thirty (30) days' written notice.

G. No materials have been delivered to the Property nor has any labor been performed upon the Property for four (4) months prior to the date of this agreement. No

materialman, supplier, laborer, or any other person has the right to place or maintain, or has placed or maintained, a lien against the Property, and there are no perfected or inchoate parties. That Parvati and Guarantors shall supply any affidavits, waivers, or sworn statements that may be required by LENDER or the Title Company to evidence Parvati's and Guarantor's representations and warranties contained in this paragraph.

 H. The Property and its use comply with all laws, rules and regulations of each governmental agency having any jurisdiction over the Property or any part of it.

 I. They have not received any written notice with respect to the Property or its use, from any governmental agency of violations of any laws or ordinances, rules, regulations or orders, including but not limited to those relating to zoning, building, fire, environmental, health and/or safety, that have not been resolved to the satisfaction of the issuer of the notice.

 J. No condemnation proceedings relating to the Property are pending, and, to the best of Parvati's and Guarantor's knowledge, none are threatened.

 K. There is no actual or threatened litigation involving or affecting the Property. Parvati and Guarantors shall defend, indemnify, and hold LENDER harmless from any liability, costs, and expenses, including reasonable attorney's fees arising from any litigation or threatened litigation as of the date of this Agreement, involving or affecting the Property and ownership and use of it by either Parvati or Guarantors.

 L. From and after the date of Closing or Transfer, Parvati and Guarantors agree to defend, indemnify and save LENDER against any and all loss, cost, damage and liability, including all reasonable costs, legal and other expenses, resulting from any misrepresentation or breach of any warranty or covenant by Parvati or Guarantors under this Agreement. Parvati and Guarantors shall have a reasonable time to contest any claim; and, so long as Parvati and Guarantors are contesting any such claim in good faith, LENDER shall not settle any claim.

 M. Parvati and Guarantors acknowledge and agree that the conveyance and transfer of the Property to LENDER in accordance with the terms of this agreement is an absolute conveyance and transfer of all their rights, title, and interest therein, in fact as well as form, and was not is not now intended as a mortgage, trust conveyance, deed of trust, or security instrument of any kind. They further agree that the consideration for such conveyance and transfer is exactly as recited in this Agreement. They each acknowledge that neither of them has any further interest (including rights of possession, repurchase, cure, or redemption) or claim in and to the Property or to the proceeds and profits, if any, which may be derived from the property, during the period of ownership of or upon subsequent resale or conveyance by LENDER, of any kind whatsoever.

 N. Neither Parvati, nor Guarantors are "a foreign person" as the term is defined in Section 1445(f) of the Internal Revenue Code.

 O. This Agreement is the valid and legally binding obligation of Parvati and Guarantors, enforceable in accordance with its terms.

## Article 3
## Possession

A. Parvati and Guarantors shall tender absolute possession of the Property to LENDER upon the signing of this Agreement.

B. Parvati and Guarantors intend to vest the absolute and unconditional title to the Property in LENDER, and to forever estop and bar Parvati and Balkrishna A. Patel, and all of their successors in interest, creditors, or any other related or unrelated third party, form having or claiming any right, title, or interest of any nature whatsoever, either in law or equity, or in possession or in expectancy, in and to the Property or any part of it.

## Article 4
## Release of Personal Liability

A. LENDER hereby releases Parvati from all personal and corporate liability with respect to any and all of the terms, covenants, conditions, and agreements set forth in the Note and Mortgage, and guarantee. This release shall in no way affect the obligations of Parvati and Guarantors under this Agreement and the related documents executed contemporaneous with this document.

B. Parvati and Guarantors hereby release LENDER in all respects from all liabilities and obligations upon said Notes and Mortgages. Parvati and Guarantors also release LENDER from any and all other claims, causes of action, or rights accruing to either Parvati or Guarantors on or at any time prior to the date of this Agreement.

C. LENDER hereby releases Balkrishna A. Patel and Nirmalaben B. Patel from all personal liability with respect to any and all of the terms, covenants, conditions, and agreements set forth in the Note and Mortgage, and guarantee.

## Article 5
## Payment of Cost and Fees

A. LENDER shall pay the cost of securing the commitment for the Owner's title insurance policy and the cost of the policy ultimately issued.

B. LENDER shall pay the cost of recording any applicable documents, including state, municipal and county transfer taxes.

C. LENDER shall be responsible for the reasonable fees and costs of its counsel in connection with the negotiation of this Agreement. Parvati and Balkrishna A. Patel shall be responsible for the reasonable fees and costs of their counsel in connection with the negotiation of this Agreement.

## Article 6
## Escrow

A. The transaction contemplated by this Agreement may be closed through an escrow if necessary. If an escrow is necessary, it shall be pursuant to the provisions of an Escrow Agreement that shall be created by LENDER, Parvati and Guarantors no later than the Closing Date. The Escrow Agreement among other parties (or their attorneys) and the Escrowee shall be in accordance with the general provisions of the usual form of escrow trust instruments for the purchase and sale of real property then in use by the Escrowee, with such special provisions inserted as may be required to conform with the provisions of this Agreement. This Agreement shall not be merged into the Escrow agreement, but the Escrow Agreement shall be deemed auxiliary to this Agreement, and as between the parties involved, the provisions of this Agreement shall govern and control.

## Article 7
## Miscellaneous

A. This Agreement is made in the State of Illinois and shall be construed in accordance with the laws thereof. If any provisions of this Agreement is in conflict with any statue of rule of law of the State of Illinois, or is otherwise unenforceable, such provision shall be deemed null and void only to the extent of such conflict or unenforceability and shall be considered separate from and shall not invalidate any other provisions of this Agreement.

B. Parvati and Guarantors acknowledge:

1. They have thoroughly read and reviewed the term and provisions of this Agreement and all attached exhibits, if any;

2. They are familiar with the terms of this Agreement; the terms are understood and are fully and unconditionally consented by it;

3. They have had the full benefit and advice of counsel of their own selection, or have had the opportunity to obtain the benefit and advice of counsel of their own selection, in regard to understanding the terms, meaning and effect of this Agreement;

4. Their execution of this Agreement is done freely, voluntarily, with full knowledge, and without duress or threats of any kind;

5. They have relied on no other representations, either written or oral, express or implied, made to them by LENDER or any other party; and

6. That the consideration received by it under this Agreement has been actual and adequate.

C. LENDER, Parvati, and Guarantors each acknowledge that there are no other agreements or Representations, either oral or written, express or implied, that are not embodied in this Agreement, and this Agreement, transfer documents and any exhibits

7

attached represent a complete integration of all prior and contemporaneous agreements and understandings of LENDER, Parvati, and Guarantors.

    D. This Agreement shall be binding upon and inure to the benefit of Parvati, Guarantors, and LENDER, their respective heirs, executors, personal representatives, successors, assigns, grantees, and legal representatives, and no other party shall be a beneficiary hereunder.

    E. Neither Parvati, nor Guarantors may voluntarily assign or transfer their respective obligations under this agreement without written consent of LENDER. Nor may LENDER voluntarily assign or transfer its obligations under this Agreement without the written consent of Parvati and Guarantors.

    F. Time shall, in all respects, be of the essence.

    G. This document shall be signed in counterparts.

    **IN WITNESS WHEREOF**, Parvati, Guarantors, and LENDER have executed this Agreement as of the day and year first above written.

OWNER:

Parvati Corp., an Illinois corporation

By: _____
Balkrishna A. Patel, President

GUARANTORS:

_____
Balkrishna A. Patel

_____
Nirmalaben B. Patel

MORTGAGEE:

Mutual Bank

By: _____
Amrish K. Mahajan, President

STATE OF ILLINOIS    )
                                ) ss.
COUNTY OF COOK     )