# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 702 | **DATE** | 11/18/2010 |
| **CASE TITLE** | Parvati Corp vs. City of Oak Forest | | |

**DOCKET ENTRY TEXT**

The Court, in its discretion, grants the second part of the individual Defendants' motion to quash the subpoena directed at the law firm Ancel Glink.

■ [ For further details see text below.]    Notices mailed by Judicial staff.

## STATEMENT

     On September 24, 2010, the individual Defendants in this lawsuit filed a Motion to Quash the Subpoena directed to the law firm Ancel, Glink, Diamond, Bush, DiCianni & Krafthefer, P.C. ("Ancel Glink"). On October 18, 2010, the Court granted Defendants' motion with respect to deposing a Federal Rule of Civil Procedure 30(b)(6) deponent of Ancel Glink. In the October 18, 2010 minute order, the Court also directed "Defendants to file a reply brief providing the necessary information required to assert the attorney-client, common interest, or work product privileges with respect to the documents requested" and to "address Plaintiff's argument concerning the crime-fraud exception as it relates to the documents requested." For the following reasons, the Court, in its discretion, grants the second part of the individual Defendants' Motion to Quash.

Continued...

| | Courtroom Deputy Initials: | KF |
|---|---|---|

## LEGAL STANDARD

The Federal Rules of Civil Procedure provide that a court shall quash or modify a subpoena if it requires disclosure of privileged information or subjects a person to undue burden. *See* Fed.R.Civ.P. 45(c)(3)(A); *Northwestern Mem'l Hosp. v. Ashcroft,* 362 F.3d 923, 935 (7th Cir. 2004). Moreover, a district court may quash or modify a subpoena if it seeks discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; [or] the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed.R.Civ.P. 26(b)(2). Motions to quash are within the sound discretion of the district court. *See Wollenburg v. Comtech Mfg. Co.*, 201 F.3d 973, 977 (7th Cir. 2000).

## BACKGROUND

In the relevant third-party subpoena, Parvati requests documents that were exchanged between Ancel Glink and the City, Dowd & Dowd, Ltd. ("Dowd"), or Medard M. Narko & Associates ("Narko") reflecting communications about specific City ordinances and zoning issues. The documents requested are summarized as follows:

1. Documents from August 1, 2007 to September 30, 2007 reflecting communications between Ancel Glink and the City regarding a scrivener's error in Appendix A adopted by the City pursuant to Ordinance 2007-07-0114O;

2. Documents from August 1, 2007 to September 30, 2007 reflecting communications between Ancel Glink and Dowd regarding a scrivener's error in Appendix A adopted by the City pursuant to Ordinance 2007-07-0114O;

3. Documents reflecting communications between Ancel Glink and the City regarding whether the subject property was zoned M-1 or M-2;

4. Documents reflecting communications between Ancel Glink and the City regarding the City's failure to designate or delineate one or more properties as M-1 or M-2 under Ordinance 2836;

5. Documents from August 1, 2005 to September 30, 2005 reflecting communications between Ancel Glink and Narko regarding the City's failure to designate or delineate one or more properties as M-1 or M-2 under Ordinance 2836;

6. Documents from March 1, 2006, through September 30, 2007 reflecting communications between Ancel Glink and Dowd regarding the City's failure to designate or delineate one or more properties as M-1 or M-2 under Ordinance 2836;

7. Documents from August 2005 to September 2005 reflecting communications between Ancel Glink and Narko relating to the zoning classification of the subject property;

8. Documents from March 1, 2006 through September 30, 2007 reflecting communications between Ancel Glink and Dowd relating to the zoning classification of the subject property;

9. Documents from October 2005 to December 2005 reflecting communications between Ancel Glink and the City relating to Bethlehem Enterprises Inc.'s application for a commercial business license submitted to the City in October 2005;

10. Documents from December 2005 to March 2006 reflecting communications between Ancel Glink and the City relating to the City of Oak Forest, Illinois Zoning Map updated March 28, 2006;

11. Documents from 2006 or 2007 reflecting communications between Ancel Glink and the City relating to the answer filed by Ancel Glink to paragraph 57 of Plaintiff's Second Amended Complaint in case 06-cv-1772;

12. Documents from 2006, 2007, or 2008 reflecting communications between Ancel Glink and Dowd relating to the City of Oak Forest, Illinois Zoning Map updated March 28, 2006; and

13. Documents reflecting communications between Ancel Glink and Baxter and Woodman, Inc. relating to drafts, revisions, or versions of the City of Oak Forest, Illinois Zoning Map updated March 28, 2006.

## ANALYSIS

### I. Attorney-Client Privilege

In the present motion to quash, Ancel Glink claims that the requested documents are privileged by the attorney-client privilege or work product privilege. To claim information is privileged, the party withholding the subpoenaed information must "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed.R.Civ.P. 45(d)(2)(A)(ii). This requirement corresponds to Fed.R.Civ.P. 26(b)(5) in that Rule 26(b)(5) requires parties asserting privilege to complete a privilege log and Rule 45(d)(2)(A)(ii) "imposes the same obligation on nonparties responding to subpoenas." *Mosely v. City of Chicago*, 252 F.R.D. 421, 426 (N.D. Ill. 2008). A privilege log must identify the following information for each separate document: "the date; the author and recipients, including their capacities; the subject matter of the document; the purpose for its production; and a specific explanation of why it is privileged." *Miyana Mach. USA, Inc. v. MiyanoHitec Mach., Inc.*, 257 F.R.D. 456, 460 (N.D. Ill. 2008).

Meanwhile, the common interest privilege is an extension of the attorney-client privilege and "applies broadly to civil litigation and includes situations where clients share a common legal interest but are represented by separate attorneys." *Pampered Chef v. Alexanian,* ___F.Supp.2d ___, 2010 WL 3602376, at *5 (N.D. Ill. 2010) (citing *United States v. BDO Seidman, LLP,* 492 F.3d 806, 816 (7th Cir. 2007)). To clarify, "[p]arties may assert a common interest where they have an identical – not merely similar – legal interest in the subject matter of a communication and the communication is made in the course of furthering the ongoing, common enterprise." *Pampered Chef,* 2010 WL 3602376, at *5; *see also BDO Seidman,* 492 F.3d at 815.

Here, the individual Defendants have provided a privilege log detailing the date of the documents at issue, the name of the actual document, the subject matter, and the privilege being asserted. After a careful review of the privilege log, the Court concludes that the eight responsive documents identified in the log are privileged under the attorney-client and common interest privileges. In particular, these documents reflect communications with either the City or other law firms representing parties in this matter and the earlier lawsuit 06-cv-1772. For example, the third document identified is email correspondence between the City's attorney and counsel for the individual Defendants regarding case strategy. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec,* 529 F.3d 371, 388 (7th Cir. 2008) ("Communications from attorney to client are privileged [] if they constitute legal advice, or tend directly or indirectly to reveal the substance of a client confidence."). Based on the privilege log and explanation of the materials that are privileged, the individual Defendants have met their burden in establishing that these documents are protected by the attorney-client and common interest privileges.

*See Kodish v. Oakbrook Terr. Fire Prot. Dist.,* 235 F.R.D. 447, 450 (N.D. Ill. 2006).

## II.   Crime-Fraud Exception

Parvati nevertheless argues that the documents it subpoenaed are discoverable under the crime-fraud exception to the attorney-client privilege. *See United States v. Zolin,* 491 U.S. 554, 563, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989) (attorney-client privilege "does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime."). In general, under this exception, attorney privilege is forfeited if the attorney is assisting his client in committing a future crime or a fraud. *See Judson Atkinson,* 529 F.3d at 388; *United States v. Al-Shahin,* 474 F.3d 941, 946 (7th Cir. 2007). "To invoke the crime-fraud exception, the party seeking to abrogate the attorney-client privilege must present prima facie evidence that 'gives colour to the charge' by showing 'some foundation in fact.'" *United States v. BDO Seidman, LLP,* 492 F.3d 806, 818 (7th Cir. 2007) (citations omitted). Put differently, the party seeking discovery must first make a threshold showing of a factual basis supporting the crime-fraud exception. *See Zolin,* 491 U.S. at 572. Under *Zolin*, "the party advocating its application must make a two-part showing: first, that there is some reason to believe that a crime or fraud has been committed, and second that the communications were in furtherance thereof." *See In re Sulfuric Acid Antitrust Litig.,* 235 F.R.D. 407, 420 (N.D. Ill. 2006).

Parvati specifically contends that "Defendants committed fraud by misrepresenting to Parvati, Bethlehem Enterprise, Inc., and this Court that Parvati's property was zoned M-2 when it had never been zoned M-2." (R. 242, Resp. Brief, at 5.) This argument is a stretch based on the information Parvati presents to the Court. More specifically, Parvati attempts to support this argument based on certain zoning commission minutes and deposition testimony in which Defendants first maintained that some of the zoning of the relevant area would be M-1, but later stated that the zoning of the entire area would be M-2. Even if the Court were to conclude (which it does not) that these communications show that there is a reason to believe that Defendants' conduct was fraudulent, Parvati has failed to show that these communications were made in furtherance of the alleged fraudulent scheme. *See id.* at 420. In other words, Parvati must demonstrate that "there is some reason to believe that the communications were intended to facilitate or conceal the alleged crime or fraud." *Abbott Labs. v. Andrx Pharms., Inc.,* 241 F.R.D. 480, 488 (N.D. Ill. 2007). Without more, the Court would be hard-pressed to conclude that the crime-fraud exception applies under the circumstances. Finally, the Court similarly rejects Parvati's argument based on the allegedly fraudulent scrivener's error because Parvati has failed to provide a sufficient factual basis to support this argument. *See BDO Seidman,* 492 F.3d at 822.

Finally, the Court reminds the parties that if they wish to file any further discovery or sanctions motions they must file a joint statement providing the information required by Northern District of Illinois Local Rule 37.2. This joint statement must provide details of the arguments advanced by both sides and the steps taken to confer in good faith. Failure to do so will result in a denial of any such motion. *See Autotech Tech. Ltd. Partnership v. Automationdirect.Com, Inc.,* 05 C 5488, 2007 WL 2713352, at *4 (N.D. Ill. Sept. 12, 2007).