**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PARVATI CORPORATION, an Illinois corporation, | ) ) ) | |
| Plaintiff, | ) ) | Case No.  08 C 0702 |
| v. | ) ) | |
| THE CITY OF OAK FOREST, *et al*., | ) ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

AMY J. ST. EVE, District Court Judge:

On December 14, 2009, Plaintiff Parvati Corporation ("Parvati") filed a five-count Fourth

Amended Complaint against Defendant City of Oak Forest, Illinois ("the City" or "Oak Forest"),

as well as Defendants Adam Dotson, Steve Jones, and David Newquist ("the Individual

Defendants"), alleging race discrimination based on Defendants preventing the sale of Parvati's

hotel to Bethlehem Enterprises, Inc. ("Bethlehem") for use as a senior living facility/extended

stay hotel for the predominantly African-American members of Bethlehem Temporary

Missionary Baptist Church (Counts I-II).  *See* 42 U.S.C. §§ 1981, 1982.  Parvati also alleges a

Fourteenth Amendment equal protection claim (Count III), a Fourteenth Amendment procedural

due process claim (Count IV), and a First Amendment retaliation claim (Count V).  *See* 42

U.S.C. § 1983.

Before the Court are the Individual Defendants' and Oak Forest's motions for summary

judgment pursuant to Federal Rule of Civil Procedure 56(a).  In response to Defendants'

summary judgment motions, Parvati concedes that the Individual Defendants are entitled to

summary judgment as to Counts III, IV, and V and that the City is entitled to summary judgment

as to Counts III and V. Thus, the Court grants judgment for Defendants on these counts. The Court addresses the parties' arguments regarding the remaining claims in Counts I, II, and IV in the present Memorandum, Opinion, and Order. For the following reasons, the Court grants Defendants' motions for summary judgment and dismisses this lawsuit in its entirety.

## BACKGROUND

### I. Northern District of Illinois Local Rule 56.1

Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). "The Rule is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Also, Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that requires the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008).

The purpose of Local Rule 56.1 statements is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). Therefore, the Court will not address the parties' legal and factual arguments made in their Rule 56.1 statements and responses. *See System Dev. Integration, LLC v. Computer Sciences Corp.,* 739 F.Supp.2d 1063, 1068 (N.D. Ill. 2010). The requirements for responses under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon,* 233 F.3d at 528. The Court may also disregard statements and responses that do not properly cite to the record. *See Cady,* 467 F.3d at 1060; *Cichon v. Exelon Generation Co., LLC,* 401 F.3d 803, 809-10 (7th Cir. 2005). With these standards in mind, the Court turns to the relevant facts of this case.

## II.    Relevant Facts

Parvati is an Illinois corporation and Oak Forest is a municipal corporation in the State of Illinois. (R. 394, Indiv. Defs.' Stmt. Facts ¶¶ 2, 3.) Steve Jones is the former Administrator of Oak Forest, Adam Dotson is the Coordinator of the Oak Forest Community Development Department, and David Newquist is an Assistant Community Development Director for Oak Forest. (*Id.* ¶¶ 4-6.) Bethlehem was an Illinois corporation with its principal place of business in Harvey, Illinois and its shareholders included the Bethlehem Temple Missionary Baptist Church, Pastor J.C. Smith, and his son, Jeffrey Smith. (R. 417, Pl.'s Rule 56.1 Stmt. Add'l Facts ¶ 15; R. 149, Fourth Am. Compl. ¶ 1.) On June 2, 2008, the Court terminated Bethlehem as a party to

this lawsuit.  (R. 33.)[1]

Between May 2000 and January 2001, Parvati constructed a Ramada Inn hotel in the "Limited Manufacturing District" of Oak Forest.  (Indiv. Defs.' Stmt. Facts ¶¶ 7, 10; R. 437, Pl.'s Rule 56.1 Stmt. Add'l Facts ¶¶ 6-8.)  On or about November 20, 2003, Parvati, through its President, Balkrishna Patel, hired Joseph Esselman and Kevin List of Inland Real Estate Sales, Inc. to market Parvati's hotel.  (R. 417, Pl.'s Rule 56.1 Stmt. Facts ¶ 11.)  Around that time, Esselman and List met with Robert McNeill, the Director of Oak Forest's Community Development Department, and Newquist, the Assistant Director of the Community Development Department, along with Oak Forest's Mayor and City Administrator.  (*Id.* ¶ 12.)  At the November 2003 meeting, Esselman and List explained that Patel was interested in selling the Ramada Inn for use as a senior independent living facility.  (*Id.* ¶ 13.)  In June 2004, McNeill and Newquist met with Parvati's representative and Bethlehem's representative, J.C. Smith, the pastor of Bethlehem Temporary Missionary Baptist Church, to discuss Parvati's plan to sell the property to Bethlehem.  (*Id.* ¶¶ 15, 16.)  At the June 2004 meeting, Pastor Smith explained that he wanted to use the property as a senior independent living facility.  (*Id.* ¶ 18.)

On July 7, 2004, the Community Development Department – the City's liaison to its Planning and Zoning Commission – petitioned the Planning and Zoning Commission to recommend the enactment of an amendment to the zoning ordinance relating to Oak Forest's manufacturing districts.  (*Id.* ¶ 19.)  On July 21, 2004, the Planning and Zoning Commission recommended to the City Council that it approve the amendment.  (*Id.*)  On August 11, 2004, the

---

[1]  Bethlehem Enterprises, Inc. was involuntarily dissolved as an Illinois corporation on October 10, 2008.  *See* http://www.ilsos.gov/corporatellc/CorporateLlcController

4

City enacted Ordinance 2836, which amended Oak Forest's 1999 zoning ordinance. (*Id.* ¶ 21.)

Prior to August 10, 2004, Parvati's property was located within the M District, also known as the

Limited Manufacturing District. (R. 437, Pl.'s Stmt. Facts ¶ 6.) As a result of Ordinance 2836,

Parvati's property became a "legal nonconforming use" located within the new M2 Heavy

Industrial District. (Indiv. Defs.' Stmt. Facts ¶ 16.)

To clarify, the newly enacted Ordinance 2836 created separate manufacturing districts,

namely, "M1" and "M2." (R. 417, Pl.'s Stmt. Add'l Facts ¶ 24.) The manufacturing district M1

became the "Light Manufacturing District" and M2 became the "Heavy Manufacturing District."

(*Id.*) The permitted uses in the M1 district included component assembly, light manufacturing or

warehousing, research and development, and engineering and testing activity. (*Id.* ¶ 27.)

Section 17-34-040 of Ordinance 2836 states in pertinent part:

> The M-1 Light Industrial Zoning District is hereby established in order to provide
> an environment conducive to less concentrated, less intense development and/or
> operation of light assembly, manufacturing, and/or warehousing activity, with a
> minimal degree of negative impact upon abutting residential and/or commercial
> zoning districts.

(R. 417, Pl.'s Stmt. Add'l Facts Ex. 18, at 17.) The permitted uses in the M2 district included

construction, heavy manufacturing and processing, warehousing and distribution, and

machinery–sales and/or services. (R. 417, Pl.'s Stmt. Add'l Facts ¶ 28.) Section 17-34-050 of

Ordinance 2836 states in pertinent part:

> The M-2 Heavy Industrial Zoning district is hereby established in order to provide
> an environment conducive to concentrated industrial development, commonly
> referred to as industrial parks, which feature a wider range of manufacturing,
> production, processing, wholesaling, and/or warehousing activities than those
> permitted in the M-1 Light Industrial Zoning District.

(R. 417, Pl.'s Stmt. Add'l Facts, Ex. 18. at 14.)

In the meantime, Bethlehem and Parvati entered into a real estate contract in which Bethlehem would acquire Parvati's property contingent upon Bethlehem obtaining the necessary approval from Oak Forest. (R. 417, Pl.'s Stmt. Add'l Facts ¶ 14.) To that end, on March 15, 2005, Bethlehem submitted a business use application seeking a textual amendment to the zoning ordinance to permit a senior independent living facility on Parvati's property, which was in the M2 Heavy Manufacturing District. (R. 388, City's Rule 56.1 Stmt. Facts ¶ 40; Indiv. Defs.' Stmt Facts ¶ 12.) Thereafter, on April 6, 2005, the Planning and Zoning Commission conducted a hearing on Bethlehem's application and voted to recommend to the City Council that it deny Bethlehem's March 2005 business use application. (City's Stmt. Facts ¶ 41.) On May 10, 2005, the City Council accepted the Planning and Zoning Commission's recommendation and denied Bethlehem's application. (Indiv. Defs.' Stmt. ¶ 13.) In Oak Forest's position letter to Bethlehem's counsel dated September 29, 2005, the City explained that Bethlehem's proposed use did not fit within the meaning of motel/hotel within the City's zoning ordinance, but instead fell under the definition of multi-family dwelling, which was not a permitted or conditionally permitted use in the M2 zone. (R. 417, Pl.'s Ex. 4, 9/29/05 Letter, at 1-2; 06 C 1772, R. 68, Admin. Record, Ex. K.) The letter further stated that "[c]ity staff will be happy to assist your client, if it so desires, in locating a more appropriate property for its proposed senior housing project." (*Id.*)

On October 6, 2005, Bethlehem filed another commercial business license application with the City – this time to operate an extended stay hotel on Parvati's property. (R. 417, Pl.'s Stmt. Facts ¶ 36.) The City denied the October 2005 application on November 21, 2005 because the proposed use would replace one non-conforming use with another non-conforming use. (R.

437, Pl.'s Stmt. Facts ¶ 20; Indiv. Defs.' Stmt. ¶ 16.) Jones, who authored the November 21,

2005 denial letter, offered to "assist Bethlehem Enterprise, Inc., with locating alternative sites

within appropriate zoning districts for its proposed extended-stay hotel project." (Indiv. Defs.'

Stmt. Facts ¶ 17.) Bethlehem did not respond to this offer. (*Id*.) Later, when Jones talked to

Pastor Smith of the Bethlehem Temporary Missionary Baptist Church, Jones explained to him

that it was a good project, but a bad location, and that the City would work with the church to

find a better location. (*Id*. ¶ 19.) It is undisputed that there were a number of better locations for

Bethlehem's project that were available in the City of Oak Forest. (*Id*. ¶ 20.)

On December 20, 2005, Parvati and Bethlehem filed an appeal with the Oak Forest

Planning and Zoning Commission challenging the November 21, 2005 decision. (*Id*. ¶ 23; R.

437, Pl.'s Stmt. Add'l Facts ¶ 22.) On February 1, 2006, the City's Planning and Zoning

Commission conducted a hearing and entered a final decision denying the appeal. (Indiv. Defs.'

Stmt. Facts ¶ 22.)

## III.    Prior Lawsuit

On March 7, 2006, Bethlehem and Parvati filed a complaint in the Circuit Court of Cook

County, Illinois, Chancery Division, against Defendants Oak Forest, Newquist, Dotson, and

Jones. (*Id*. ¶ 24; R. 388, City's Stmt. Facts ¶ 1.) On March 30, 2006, Defendants filed a timely

notice of removal to federal court. (City's Stmt. Facts ¶ 3.) As part of this first lawsuit, Parvati

and Bethlehem sought review of the Oak Forest Planning and Zoning Commission's February 1,

2006 administrative decision denying Bethlehem's appeal regarding its October 2005 business

license application to operate an extended stay hotel on Parvati's property pursuant to 735 ILCS

5/3-110 (Count I). (*Id*. ¶ 2.) In addition, Plaintiffs sought relief for: Defendants violating

7

Plaintiffs' right to make and enforce contracts pursuant to 42 U.S.C. § 1981 (Count II);

Defendants violating Plaintiffs' right to purchase, sell, hold, or convey real estate pursuant to 42

U.S.C. § 1982 (Count III); Defendants' violations of the Federal Fair Housing Act, 42 U.S.C. §§

3604(a), 3617 (Counts IV-V); Defendants' denial of substantive due process pursuant to the

Fourteenth Amendment (Count VI); and Defendants' denial of Plaintiffs' right to equal

protection under the Fourteenth Amendment (Counts VII-VIII). (*Id.* ¶ 4; Indiv. Defs.' Stmt.

Facts ¶ 25.)

On March 12, 2007, Plaintiffs Parvati and Bethlehem filed a motion for judgment on the

administrative review claim. (City's Stmt. Facts ¶ 6.) On July 20, 2007, the Court entered an

order denying Plaintiffs' motion. (*Id.* ¶ 7; Indiv. Defs.' Stmt. Facts ¶ 26.) Shortly thereafter, on

September 12, 2007, Parvati and Bethlehem filed a motion to voluntarily dismiss the remainder

of their claims. (City's Stmt. Facts ¶ 8; Indiv. Defs.' Stmt. Facts ¶ 27.) The Court granted

Plaintiffs' motion to dismiss without prejudice on September 28, 2007. (City's Stmt. Facts ¶ 8;

Indiv. Defs.' Stmt. Facts ¶ 27.) At that time, Plaintiffs did not appeal the Court's July 20, 2007

judgment as to the administrative review count. (City's Stmt. Facts ¶ 9.) Meanwhile, on January

31, 2008, Parvati and Bethlehem filed the present lawsuit and the Court stayed discovery in this

lawsuit from June 2, 2008 until September 17, 2009. (Indiv. Defs.' Stmt. Facts ¶ 28; 08 C 702,

R. 33, 135.)

On July 14, 2008, Parvati filed a Federal Rule of Civil Procedure 60(b) motion to vacate

the Court's July 20, 2007 judgment in the 2006 lawsuit. (*Id.* ¶ 29; City's Stmt. Facts ¶ 10.) The

City responded to Parvati's motion on the merits, but also argued that Parvati did not have

standing to re-open the administrative review claim because on March 18, 2008, Parvati

conveyed its ownership in the subject property to its mortgage lender, Mutual Bank, in lieu of foreclosure. (City's Stmt. Facts ¶ 11; 06 C 1772, R. 225, City's Resp. Brief, at 8, Ex. D.) The Court denied Parvati's motion to vacate on December 16, 2008 and subsequently denied Parvati's Rule 59(e) motion for reconsideration on January 7, 2009. (City's Stmt. Facts ¶¶ 12, 13.) On January 14, 2009, Parvati filed a notice of appeal regarding the Court's December 16, 2008 and January 7, 2009 orders in the 2006 lawsuit. (*Id.* ¶ 14.)

On appeal, the Seventh Circuit concluded that Parvati did not having standing to challenge the Oak Forest Planning and Zoning Commission's decision because Parvati had conveyed the property at issue to its mortgage lender. (*Id.*) The Seventh Circuit also discussed the Court's December 16, 2008 order in which the Court concluded that Parvati had standing to challenge Oak Forest's decision based on the possible preclusive effect of the 2006 lawsuit on future lawsuits. *See Parvati Corp. v. City of Oak Forest, Ill.,* 630 F.3d 512, 518 (7th Cir. 2010). In doing so, the Seventh Circuit concluded that because the potential injury based on any preclusive effect of the 2006 lawsuit was "not traceable to the City's alleged unlawful conduct," but instead was "entirely self-inflicted, resulting solely from Parvati's decision to split its claims," Parvati did not have standing to bring the appeal of the Court's orders in the 2006 lawsuit. *Id.*

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

9

242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment

motions, "facts must be viewed in the light most favorable to the nonmoving party only if there

is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167

L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that

there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317,

323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary

judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine

issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted). "[D]istrict courts presiding over

summary judgment proceedings may not weigh conflicting evidence or make credibility

determinations, both of which are the province of the jury." *Omnicare, Inc. v. UnitedHealth*

*Grp., Inc.,* 629 F.3d 697, 704-05 (7th Cir. 2011) (internal citations omitted).

## ANALYSIS

### I.    Claim Preclusion

In their summary judgment motions, Oak Forest and the Individual Defendants first argue

that Parvati's entire lawsuit is barred by the doctrine of claim preclusion – also known as res

judicata. "In general, the doctrine of claim preclusion or res judicata bars a party from asserting

a claim that has already been resolved in another lawsuit between the same parties or those in

privity with them, and the doctrine reaches both claims that were actually asserted in an earlier

lawsuit and those that could have been asserted but were not." *Russian Media Group, LLC v.*

*Cable Am., Inc.,* 598 F.3d 302, 310 (7th Cir. 2010). "The doctrine of claim preclusion is

premised on the idea that, when a claim has been fully litigated and come to judgment on the

merits, finality trumps." *In re Ingersoll, Inc.,* 562 F.3d 856, 861 (7th Cir. 2009). Federal law

applies under the circumstances because a federal court decided the earlier judgment. *See Rodriquez v. Cook County, Ill.,* 664 F.3d 627, 629 (7th Cir. 2011). Under federal law, claim preclusion has three elements: (1) a final decision in the first lawsuit; (2) a dispute arising from the same transaction, namely, the same operative facts; and (3) the same parties. *See Czarniecki v. City of Chicago,* 633 F.3d 545, 548 (7th Cir. 2011).

Here, Parvati does not argue that Defendants have failed to establish the requisite elements of their affirmative defense. Instead, Parvati contends that claim preclusion does not apply under the circumstances because the Court expressly reserved Parvati's right to maintain the present, second lawsuit in the September 28, 2007 Minute Order granting Plaintiffs' motion to voluntarily dismiss their claims without prejudice. *See* Restatement (Second) of Judgments, § 26(1)(b) and cmt. b (1982). Indeed, the Seventh Circuit has recognized that litigants who want to split claims among different lawsuits may do so based on the exceptions in the Restatement (Second) of Judgments, § 26(1). *See, e.g., Arrow Gear Co. v. Downers Grove Sanitary Dist.,* 629 F.3d 633, 638 (7th Cir. 2010); *Herrmann v. Cencom Cable Assoc., Inc.,* 999 F.2d 223, 225 (7th Cir. 1993). In particular, the Seventh Circuit teaches, "[i]f a court reserves for later resolution an issue that might otherwise have been adjudicated in the initial proceeding, res judicata will not operate to bar the subsequent suit." *Central States, Se. & Sw. Areas Pension Fund v. Hunt Truck Lines, Inc.,* 296 F.3d 624, 629 (7th Cir. 2002) (citation omitted). In other words, a "judgment that expressly leaves open the opportunity to bring a second action on specified parts of the claim or cause of action that was advanced in the first action should be effective to forestall preclusion." 18 C. Wright, Miller & Cooper, Federal Practice & Procedure

§ 4413 (3d ed. 2010).[2]

Despite Defendants' argument to the contrary, in the Court's September 28, 2007 Minute Order granting Plaintiffs' motion to dismiss their claims without prejudice, the Court expressly anticipated the possibility of a second lawsuit:

> The Court notes that if Plaintiffs' claims are subsequently re-filed, Defendants will be able to utilize much of their work product and discovery undertaken in the course of this litigation. For example, the work and expenses incurred in taking depositions, compelling discovery, reviewing documents, and issuing subpoenas will not need to be repeated in a subsequent litigation. Similarly, Defendants successfully briefed several issues, including dismissal of numerous defendants and Count I of the SAC [Second Amended Complaint], which will not be re-litigated in a subsequent action. Defendants also answered the SAC and briefed a motion for dismissal of Count IV of the SAC – work which will surely be useful in a re-filed action.
>
> ....
>
> The parties agree that all documents, interrogatory answers, depositions, and other discovery produced in this matter, as well as the Court's rulings on motions to compel and protective orders, will apply in any subsequent re-filed action.

(06 C 1772, R. 197, 9/28/07 Minute Order, at 2-3.) In fact, Defendants were on notice of a possible, second lawsuit because both Plaintiffs and Defendants discussed the acceptable terms and conditions of the voluntary dismissal, including the use of discovery and the Court's prior rulings in any re-filed action. (06 C 1772; R. 190, Pls.' Mot., at 8-9; R. 194, Defs.' Resp., at 8.)

Because the Court expressly allowed for the filing of Parvati's second lawsuit in the September 28, 2007 Minute Order, claim preclusion does not bar Parvati's claims in the present lawsuit. *See D & K Props. Crystal Lake v. Mutual Life Ins. Co. of New York,* 112 F.3d 257, 259-

---

[2] Although the Seventh Circuit's *Parvati* decision discussed the preclusive effect of the 2006 lawsuit in the context of standing, the Seventh Circuit did not examine the Court's September 28, 2007 Minute Order to determine whether the Court expressly reserved Parvati's right to maintain the present, second lawsuit. *See Parvati*, 630 F.3d at 517 n.8.

60 (7th Cir. 1997) ("res judicata does not apply when a cause of action has been expressly reserved for later adjudication"). The Court now turns to the merits of Parvati's remaining claims.

## II.    Race Discrimination Claims – Counts I and II

Parvati brings claims under 42 U.S.C. § 1981, which prohibits race discrimination in contractual relations, and 42 U.S.C. § 1982, which prohibits race discrimination in the sale of real property. *See Shaikh v. City of Chicago,* 341 F.3d 627, 629 (7th Cir. 2003). Because Sections 1981 and 1982 are derived from the first section of the Civil Rights Act of 1866 and share a common purpose, federal courts construe Section 1981 and 1982 claims in tandem. *See Morris v. Office Max, Inc.,* 89 F.3d 411, 413 (7th Cir. 1996). To establish a Section 1981 or 1982 claim, a plaintiff may present either direct evidence of intentional discrimination or proceed under the indirect method of proof set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Elkhatib v. Dunkin Donuts, Inc.,* 493 F.3d 827, 829 (7th Cir. 2007); *Sanghvi v. St. Catherine's Hosp., Inc.,* 258 F.3d 570, 577 (7th Cir. 2001). Parvati contends that it can establish its Section 1981 and 1982 race discrimination claims under the direct method of proof.

### A.    Standing

Before addressing Parvati's claims in the context of the direct method of proof, the Court notes that Parvati's theory of liability is that as the property owner, it is not required to be a member of a racial minority because it was seeking to sell its property to Bethlehem for use as a senior living facility/extended stay hotel for the predominantly African-American members of Bethlehem Temporary Missionary Baptist Church. *See Sullivan v. Little Hunting Park, Inc.,* 396

U.S. 229, 237, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969) (white owner had standing to maintain

private cause of action under Section 1982 because he was "punished for trying to vindicate the

rights of minorities"); *see also Jackson v. Birmingham Bd. of Educ.,* 544 U.S. 167, 176, 125

S.Ct. 1497, 161 L.Ed.2d 361 (2005) ("in *Sullivan* we interpreted a general prohibition on racial

discrimination to cover retaliation against those who advocate the rights of groups protected by

that prohibition").  Indeed, courts in this district have concluded that based on the Supreme

Court's decision in *Sullivan*, a "person has an implied right of action against any other person

who, with racially discriminatory intent, injures him because he made contracts with non-

whites." *West Zion Highlands v. City of Zion,* 549 F.Supp. 673, 676 (N.D. Ill. 1982) (citation

omitted); *see also Hispanics United of DuPage County v. Village of Addison, Ill.,* 958 F.Supp.

1320, 1327-28 (N.D. Ill. 1997) ("cases that involve discriminatory housing or property actions

often interfere with the contractual rights of home owners seeking to rent or sell to minorities"

and in "such cases, a home owner is often 'the only effective adversary.'") (citation omitted).

### B.      Direct Method of Proof

Turning to Parvati's Section 1981 and 1982 claims under the direct method of proof,

Parvati must present either direct or circumstantial evidence that would permit a reasonable jury

to infer intentional discrimination.  *See Burnell v. Gates Rubber Co.,* 647 F.3d 704, 708 (7th Cir.

2011); *see also Harris v. Warrick County Sheriff's Dep't,* 666 F.3d 444, 447 (7th Cir. 2012)

(direct method requires that plaintiff present "direct or circumstantial evidence that creates a

convincing mosaic of discrimination on the basis of race.") (quotation omitted).  "Direct

evidence is something close to an explicit admission ... that a particular decision was motivated

by discrimination." *Diaz v. Kraft Foods Global, Inc*., 653 F.3d 582, 587 (7th Cir. 2011).  On the

14

other hand, circumstantial evidence can establish discriminatory animus, but through a longer

chain of inferences than direct evidence. *See Everett v. Cook County,* 655 F.3d 723, 729 (7th

Cir. 2011). Circumstantial evidence may include suspicious timing, ambiguous statements,

behavior or comments directed at others in the protected class, or "other bits and pieces from

which an inference of discriminatory intent might be drawn." *Silverman v. Board of Educ. of

City of Chicago,* 637 F.3d 729, 734 (7th Cir. 2011) (quotation omitted). In the end, the

circumstantial evidence must point directly to a discriminatory reason for the defendant's

conduct. *See Abuelyaman v. Illinois State Univ.,* 667 F.3d 800, 809 (7th Cir. 2011); *Diaz,* 653

F.3d at 590.

### 1.    Suspicious Timing

In support of its race discrimination claims, Parvati argues that there is circumstantial

evidence establishing discriminatory intent based on the sequence of events and suspicious

timing, namely, that once Defendants learned that Parvati was going to sell its hotel to

Bethlehem for use as a senior living facility/extended stay hotel for the predominantly African-

American members of Bethlehem Temporary Missionary Baptist Church, Defendants purposely

changed the relevant zoning ordinance to deny Bethlehem's license applications. More

specifically, Parvati points to the November 2003 meeting of its real estate brokers, Oak Forest's

Community Development Department, and other Oak Forest officials at which time the sale of

Parvati's property was discussed. Parvati maintains that its broker Esselman left the November

2003 meeting with the impression that the City would approve the use of Parvati's property for a

senior independent living facility. Parvati further asserts that it was only after Defendants

realized that Pastor Smith and his congregation were African-American at the June 2004 meeting

with McNeill and Newquist, that Defendants changed course regarding the proposed use of Parvati's property. Thereafter, Parvati posits, Defendants intentionally discriminated against Bethlehem when the Community Development Department petitioned the Planning and Zoning Commission in July 2004 to amend the zoning ordinance, which ultimately changed the zoning district where Parvati's hotel was located to the M2 Heavy Industrial District. As discussed above, the permitted uses in the M2 district include construction, heavy manufacturing and processing, warehousing and distribution, and machinery–sales and/or services.

Parvati also highlights as suspicious the fact that Ordinance 2836 incorrectly stated that the hearing before the Planning and Zoning Commission relating to the ordinance was held on July 7, 2004, when it was actually held on July 21, 2004, although the legal notice of the meeting correctly stated that it would be held on July 21, 2004. (R. 417, Pl.'s Stmt. Add'l Facts ¶ 20.) Furthermore, Parvati takes issue with the fact that the City gave thirteen days notice before the July 21, 2004 hearing, instead of fifteen days notice as required by state law.

First, "suspicious timing alone is rarely sufficient to defeat a motion for summary judgment," because "mere temporal proximity is not enough to establish a genuine issue of material fact." *Silverman,* 637 F.3d at 736 (citation omitted); *see also Leitgen v. Franciscan Skemp Healthcare, Inc.,* 630 F.3d 668, 675 (7th Cir. 2011) ("suspicious timing alone is almost always insufficient to survive summary judgment"). More importantly, Parvati's arguments are speculative and ask the Court to make inferences that are too attenuated, especially in light of the undisputed evidence in the record that Oak Forest was willing to work with Bethlehem to find a more appropriate location for its senior independent living facility. *See Springer v. Durflinger,* 518 F.3d 479, 484 (7th Cir. 2008) ("[I]t is well-settled that speculation may not be used to

manufacture a genuine issue of fact.") (internal quotation marks omitted); *see also Leitgen,* 630

F.3d at 675 (inferences that are too attenuated cannot survive summary judgment). Specifically,

in Oak Forest's September 29, 2005 position letter to Bethlehem's attorneys, the City stated that

"[c]ity staff will be happy to assist your client, if it so desires, in locating a more appropriate

property for its proposed senior housing project." In the November 21, 2005 letter denying

Bethlehem's October 2005 commercial license application, Jones offered to "assist Bethlehem

Enterprise, Inc., with locating alternative sites within appropriate zoning districts for its

proposed extended-stay hotel project." When Jones later talked to Pastor Smith, Jones explained

to him that the senior independent living facility was a good project, but a bad location, and that

the City would work with the church to find a better location. In fact, it is undisputed that there

were a number of better locations that were available for Bethlehem's senior living

facility/extended stay hotel in Oak Forest. Furthermore, at the Planning and Zoning

Commission's February 1, 2006 hearing, Jones reiterated that "[h]aving a senior housing facility

in Oak Forest is a good thing," but "our Zoning Ordinance does not allow us to issue the permit.

In effect, good use – bad location." (R. 437, Pl.'s Ex. 1, 2/01/06 Mins. & Hr'g., at 14.) It is

undisputed that Bethlehem did not respond to these offers.

Meanwhile, there is undisputed evidence in the record supporting the denial of

Bethlehem's applications based on the location of the proposed senior independent living

facility, including an April 6, 2005 memorandum from McNeill, the Community Development

Coordinator, to the City Council:

> [T]his department views the petitioner's request as inserting a new residential
> element into the zoning equation for industrial areas. The contradiction in
> purpose and intent could not be clearer. No matter how these types of facilities
> are portrayed by any petitioner, the simple fact is that whether they are operated

as a commercial business or non-profit facility, the basic product is living space on a long-term basis – in the language of zoning, multi-family attached residential use. Given the site's isolation and the surrounding uses, we would not only be creating a bevy of non-conforming industrial uses (which could not be rebuilt if destroyed by fire), we would be creating an island of residential use amidst an environment that could not be construed as pleasant by anyone's stretch of the imagination.

(R. 68, Admin. Record, Ex. H, 4/06/05 Memo, at 2.)

## 2. Historical Background

In addition, relying on the equal protection standard set forth in *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 267, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977), Parvati contends that the historical background of Oak Forest's decision to amend the ordinance shows discriminatory intent, especially given the evidence of Defendants' departures from the normal procedures in amending the relevant ordinance. *See id.* at 267 (in context of equal protection claim, historical background may "reveal[] a series of official actions taken for invidious purposes"). Specifically, Parvati argues that the record is devoid of requests from developers, data compilations, studies, or surveys supporting the reasons for amending the ordinance. Although there are no particular requests, data compilations, studies, or surveys in the record, the minutes of the July 21, 2004, Planning and Zoning Commission's meeting reflect the reasons for the change in the ordinance, most notably that the prior ordinance was very "limited in terms of protections and safeguards for the public" and that it left "open to interpretation as to what standards are acceptable in what particular area." (R. 417, Pl.'s Ex. 24, 7/21/04, Mins., at 2490.) More importantly, Parvati does not explain how the lack of these particular documents, surveys, and studies was a departure from Oak Forest's normal procedures in amending ordinances in the first instance, but instead relies upon assumptions and speculation.

18

*See Overly v. KeyBank Nat'l Ass'n,* 662 F.3d 856, 864 (7th Cir. 2011) ("reliance on speculation is not enough to get the case to a jury").

Parvati also argues that the City departed from its normal procedures because it did not use an attorney in connection with amending Ordinance 2836. In support of this argument, Parvati points to the City's code that provides compensation for attorneys who draft ordinances. Parvati, however, does not provide any other code, rule, or statute that requires an attorney to draft the City's ordinance. Parvati also argues that the City departed from its normal procedures in amending Ordinance 2836 because it did not identify the parcels of land with PIN numbers (permanent index numbers) and that there was no Appendix A attached to Ordinance 2836, although the ordinance referenced Appendix A.

Although the parties do not dispute the facts that the new ordinance failed to identify the parcels by PIN numbers and there was no Appendix A, Parvati's attempt to show Defendants departed from established procedures fails because this evidence – or lack thereof – does not support a reasonable inference of a discriminatory reason for Defendants' conduct in amending the zoning ordinance. *See Abuelyaman,* 667 F.3d at 809. Put differently, the evidence in the record does not raise a genuine issue of material fact that Defendants' reason for amending the ordinance was "an obvious pretext for racial discrimination" that is "unexplainable on grounds other than race," as Parvati argues. *See Arlington Heights,* 429 U.S. at 564; *see also Shaw v. Reno,* 509 U.S. 630, 644, 113 S.Ct. 2816, 125 L.Ed.2d 511 (1993) (equal protection challenge of congressional redistricting plan).

Finally, Parvati contends that a discussion during a January 23, 2006 meeting held prior to the February 1, 2006 Oak Forest Planning and Zoning Commission hearing regarding

19

Bethlehem's appeal establishes Jones' discriminatory intent. To clarify, in December 2005, Parvati's lender hired Dan Shomon and Gerry Galloway to assist Bethlehem in getting zoning approval for the senior independent living facility. (R. 437, Pl.'s Stmt. Facts ¶ 30.) Shomon and Galloway, along with Parvati's manager Amit Patel, met with Jones and Dotson on January 23, 2006. (R. 437, Pl.'s Stmt. Facts ¶ 33.) In his affidavit, Amit Patel avers that Galloway compared the racial composition of Parvati's clientele at the Ramada Inn to the potential residents of Bethlehem's senior independent living facility. (R. 437, Pl.'s Ex. 2, Patel Aff. ¶ 10.) Patel also avers that during this meeting Jones asked him if Parvati had another buyer. (*Id*.) Assuming Patel's averments are true and admissible as evidence, the fact that Jones asked Patel if Parvati had another buyer for its Ramada Inn at a meeting where an agent of Parvati's lender allegedly discussed race does not establish that Jones was asking Patel about another buyer to see whether that buyer was African-American, as Parvati suggests. Further, Parvati does not allege, much less establish, any connection between the City and the lender's agent. In short, any such inference that Jones acted with discriminatory intent is unreasonable. *See Tindle v. Pulte Home Corp.,* 607 F.3d 494, 495 (7th Cir. 2010) (courts are not required to draw unreasonable inferences at summary judgment).[3]

Viewing the facts and all reasonable inferences in Parvati's favor, Parvati has not presented sufficient evidence creating a convincing mosaic of race discrimination against the Individual Defendants, especially because it is undisputed that Defendants repeatedly offered to

---

[3] Parvati's allegations that Defendants "lied" or made "false" statements about Ordinance 2836 and its application to Parvati's property are not supported by the record, but instead are based on mere speculation and conjecture. *See Delapaz v. Richardson,* 634 F.3d 895, 901 (7th Cir. 2011) ("conjecture alone cannot defeat a summary judgment motion").

assist Bethlehem in finding a better location in Oak Forest for the proposed senior independent living facility, although Bethlehem did not take Defendants up on their offer.  *See Harris*, 666 F.3d at 447; *Trade Fin. Partners, LLC v. AAR Corp.,* 573 F.3d 401, 407 (7th Cir. 2009) ("nonmoving party must point to specific facts showing that there is a genuine issue for trial; inferences relying on mere speculation or conjecture will not suffice").  In other words, Parvati has failed to establish a triable issue of fact regarding the Individual Defendants' discriminatory intent under the direct method of proof.  *See Celotex Corp.*, 477 U.S. at 322 (Rule 56 "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"); *see also Musikiwamba v. ESSI, Inc.,* 760 F.2d 740, 753 (7th Cir. 1985) (to be liable for race discrimination under Section 1981, an individual defendant must have personally caused or participated in discriminatory action).  Because Parvati has failed to establish a constitutional deprivation under Sections 1981 and 1982, the Court need not address the Individual Defendants' immunity arguments.  *See, e.g., Marcavage v. City of Chicago,* 659 F.3d 626, 632 (7th Cir. 2011); *Mucha v. Village of Oak Brook,* 650 F.3d 1053, 157-58 (7th Cir. 2011).

### C. *Monell* Claim Against Oak Forest

In addition, Parvati has failed to present sufficient evidence that Oak Forest is liable for race discrimination under Sections 1981 and 1982.  To do so, Parvati must show that a custom or policy within the meaning of *Monell v. Department of Social Serv.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), caused the alleged violation of the right to make and enforce contracts or sell real property.  *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735-36, 109

S.Ct. 2702, 105 L.Ed.2d 598 (1989); *Looper Maint. Serv. Inc. v. City of Indianapolis,* 197 F.3d 908, 913 (7th Cir. 1999). In other words, "Section 1981, like § 1983, also requires a plaintiff to demonstrate an official policy or custom in order to allow for municipal liability." *Alexander v. City of Milwaukee*, 474 F.3d 437, 448 (7th Cir. 2007).

To establish liability against Oak Forest under *Monell*, Parvati must show that: (1) it suffered a deprivation of a constitutional right, (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority, that (3) proximately caused its constitutional injuries. *See Ovadal v. City of Madison,* 416 F.3d 531, 535 (7th Cir. 2005); *see also Wagner v. Washington County*, 493 F.3d 833, 836 (7th Cir. 2007). Here, Parvati has failed to establish the first element of its *Monell* claim, namely, that it suffered the deprivation of a constitutional right – as discussed in detail above. Without any such constitutional deprivation, Parvati cannot maintain a *Monell* claim against the City. *See Palka v. Shelton,* 623 F.3d 447, 455 (7th Cir. 2010); *Christensen v. County of Boone,* 483 F.3d 454, 465 (7th Cir. 2007).

Therefore, construing the facts and all reasonable inferences in Parvati's favor, Parvati has failed to present sufficient evidence raising a genuine dispute as to the material fact that the City has a custom or policy within the meaning of *Monell* embodying unlawful race discrimination as required under Sections 1981 and 1982. *See Morris,* 89 F.3d at 413. The Court therefore grants Defendants' motions for summary judgment as to Counts I and II of the Fourth Amended Complaint.

## III.     Procedural Due Process Claim – Count IV

Next, in Count IV of the Fourth Amended Complaint, Parvati alleges that the City

violated its right to procedural due process when the City denied its August 24, 2007 application for an extended stay hotel use of its property because Ordinance 2836 is void, meaningless, and constitutionally vague. *See Sherman v. Koch,* 623 F.3d 501, 519 (7th Cir. 2010) ("The void for vagueness doctrine rests on the basic principle of due process that a law is unconstitutional if its prohibitions are not clearly defined.") (citation omitted). More specifically, "[o]bjections to vagueness under the Due Process Clause rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk. Vagueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis." *Maynard v. Cartwright,* 486 U.S. 356, 361, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988); *see also United States v. Plummer,* 581 F.3d 484, 488 (7th Cir. 2009) (void for vagueness "challenges are analyzed as-applied unless First Amendment interests are threatened"); *United States v. Antzoulatos,* 962 F.2d 720, 726 (7th Cir. 1992) ("[r]egulation of economic activity...does not implicate the First Amendment"). As the Seventh Circuit recently explained, a "law is unconstitutionally vague if it fails to sufficiently define the conduct it prohibits; the point of the vagueness doctrine is to permit individuals to conform their conduct to the law's requirements and to guard against arbitrary or discriminatory enforcement." *Milestone v. City of Monroe, Wis.,* 665 F.3d 774, 785 (7th Cir. 2011); *see also Rowan v. United States Post Office,* 397 U.S. 728, 740, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970) ("A statute is fatally vague only when it exposes a potential actor to some risk or detriment without giving him fair warning of the nature of the proscribed conduct."). It is well-established that the due process clause does not require "perfect clarity and precise guidance," *see Sherman,* 623 F.3d at 519 (citation omitted), and that "[c]ommon sense must not

be and should not be suspended when judging the constitutionality of a rule or statute."

*Anderson v. Milwaukee County,* 433 F.3d 975, 978 (7th Cir. 2006).

Ordinance 2836 is a business/land use regulation and economic regulations are subject to a "less stringent" void for vagueness standard. *See Brockert v. Skornicka,* 711 F.2d 1376, 1381 (7th Cir. 1983); *see, e.g., Cruz v. Town of Cicero,* No. 99 C 3286, 2000 WL 369666, at *3 (N.D. Ill. Apr. 6, 2000). As the Seventh Circuit explains, "[e]conomic regulation usually deals with a narrower subject and those affected by it are more likely to consult the law, seeking clarification if necessary, in order to plan their behavior." *Brockert,* 711 F.2d at 1381 (citing *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982)). As the *Hoffman Estates* Court clarified:

> [E]conomic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process.

*Hoffman Estates,* 455 U.S. at 498; *see also Record Head v. Sachen,* 682 F.2d 672, 676 (7th Cir. 1982) (economic regulation is "directed at people who are assumed to have some expertise and some ability to demand clarification"). Also, vague terms of an economic regulation "may be given content through proper application." *Brockert*, 711 F.2d at 1381 (citation omitted).

Parvati asserts that Ordinance 2836 is impermissibly vague because the former "Limited Manufacturing District" in which its hotel was situated prior to Ordinance 2836's enactment was completely deleted and the City never specified which portions of the Limited Manufacturing District were deemed M1 Light Industrial and which ones were M2 Heavy Industrial. On March 28, 2006, however, Oak Forest updated its zoning map that delineated the M1 and M2 districts.

24

(City's Stmt. Facts ¶ 92, Ex. V, Zoning Map.)  Even if the City had failed to delineate the

industrial districts, through the administrative process and the relevant business use applications,

Parvati learned in advance of taking any detrimental action that its property was situated in the

M2 Heavy Industrial District and that Bethlehem's and Parvati's proposed business uses did not

conform with M2's permissible uses.  *See Brockert*, 711 F.2d at 1381 (vague term "may be given

content through proper application").  Put differently, when Parvati and Bethlehem applied for

business use licenses and availed themselves of Oak Forest's administrative process, Oak Forest

explained why the proposed business use of Parvati's Ramada Inn did not fit within Ordinance

2836's permitted uses of the M2 district.  In particular, after denying Bethlehem's first business

use application, the City clarified that Bethlehem's proposed use did not fit within the meaning

of motel/hotel, but instead fell under the definition of multi-family dwelling, which was not a

permitted or conditionally permitted use in the M2 district.  After denying Bethlehem's second

business use license, the City explained that the proposed business use would replace one non-

conforming use with another non-conforming use.  As to Parvati's August 24, 2007 application

for an extended stay hotel use, the City explained to Parvati that the 2007 amendment to the

ordinance mistakenly included the use of extended stay hotels in the M2 district and that the City

subsequently corrected the mistake on September 12, 2007.  (R. 449, Ex. G, 9/12/07 Letter, at 1;

Ex. D, Dotson Aff. ¶¶ 5, 6, 14.)  In short, the City explained its error to Parvati before Parvati

could take any detrimental action, namely, before Parvati could violate the ordinance.  Thus,

through the City's application of Ordinance 2836 to the relevant business use applications,

Parvati was put on notice of the ordinance's manufacturing districts and their prohibited uses so

that Parvati could conform its conduct to avoid violating the zoning ordinance.  *See Rowan,* 397

25

U.S. at 740, *Milestone,* 665 F.3d at 785; *Brockert*, 711 F.2d at 1381.

Parvati nevertheless argues that "[m]any courts have held that zoning ordinances, which create different districts but do not delineate what areas or properties within the municipality are in which districts, are unconstitutionally void for vagueness." (R. 419, Pl.'s Mem. in Opp., at 31.) Parvati relies upon the following case law in support of its contention: *County of Winnebago v. Cannell*, 376 Ill. 277, 33 N.E.2d 478 (1941); *County of Winnebago v. Niman*, 397 Ill. 37, 72 N.E.2d 818 (1947); *Weeks v. Town of Tumwater*, 66 Wash.2d 33, 400 P.2d 789 (1965); *Slattery v. Township of Caldwell*, 79 N.J. Super. 591, 192 A.2d 330 (1963). Parvati's argument based on these older state court decisions does not save the day because the Supreme Court of Illinois, the Supreme Court of Washington, and the Superior Court of New Jersey did not have the benefit of the United States Supreme Court's 1982 decision in *Hoffman Estates* – as well as more recent United States Supreme Court cases regarding the void for vagueness doctrine – to guide them. *See Smith v. Goguen,* 415 U.S. 566, 573 n.7, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974) ("The elements of the void-for-vagueness doctrine have been developed in a large body of precedent from this Court."). Moreover, the Illinois decisions are not persuasive because they also concerned eminent domain issues in the context of farm land. *See Cannell*, 376 Ill. at 279-80; *Niman*, 397 Ill. at 39.

Accordingly, through its own inquiries via the business license applications and availing itself of Oak Park's administrative process, Parvati was able to clarify Ordinance 2836's proscriptions and was put on notice of the ordinance's manufacturing districts and their prohibited uses prior to taking any detrimental action. *See Hoffman Estates,* 455 U.S. at 498; *Milestone,* 665 F.3d at 785; *Brockert*, 711 F.2d at 1381. Hence, Ordinance 2836 survives

26

Parvati's void for vagueness challenge as applied to the facts of this case. *See Maynard*, 486 U.S. at 361. The Court therefore grants the City's summary judgment motion as to Count IV of the Fourth Amended Complaint.

## CONCLUSION

For the these reasons, the Court grants Defendants' motions for summary judgment brought pursuant to Federal Rule of Civil Procedure 56(a) and dismisses this lawsuit in its entirety. Because the Court addressed Defendant City of Oak Forest's objections to Plaintiff's Local Rule 56.1(b)(3)(C) Statement of Additional Facts and Plaintiff's Local Rule 56.1(b)(3)(B) Response in the context of each fact, the Court denies Defendant's motions to strike as moot.

**Date:** March 20, 2012

**ENTERED**

**AMY J. ST. EVE**
**United States District Court Judge**